[853 NYS2d 45]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JEBB COR-
LISS, Respondent.

First Department, March 4, 2008

APPEARANCES OF COUNSEL

*Robert M. Morgenthau, District Attorney*, New York City (*Eric Rosen* and *Sheryl Feldman* of counsel), for appellant.

*Heller & Heller*, New York City (*Peter Toumbekis* and *Mark Jay Heller* of counsel), for respondent.

**OPINION OF THE COURT**

SAXE, J.

Defendant identifies himself as a "BASE jumper." The acronym stands for various types of structures from which such individuals parachute: Building, Antenna, Span (such as bridges), Earth (such as cliffs). Prior to the incident described here, defendant hosted a television program aired by the Discovery Channel called "Stunt Junkies," featuring daredevils participating in extreme sports. The present matter concerns defendant's indictment for reckless endangerment in the first degree, following his arrest on April 27, 2006 at approximately 5:00 P.M., at the observation deck of the Empire State Building, which occurred after security guards and police officers prevented him from making a planned jump off the building.

The testimony presented to the grand jury by security guards and a police officer who were present at the scene indicated that defendant entered the Empire State Building on that date wearing a prosthetic "fat suit" and mask to disguise his appearance. When he emerged at the 86th floor observation deck, having removed his "fat suit," he was wearing a jumpsuit and a backpack containing a parachute, as well as a helmet with a camera mounted on it. He quickly scaled the security fence and arrived at the outer ledge of the building. Building security guards, who had been alerted of a possible jumper by an anonymous source, attempted to apprehend defendant. Defendant initially resisted but, after a struggle during which the security guards were situated on the inside of the security fence and defendant was on the outside, he was handcuffed to a rail and rendered unable to jump. When he informed the security guards that while tethered to the building in that position, his parachute could accidentally open, which could cause him fatal injuries, the guards cut the straps of the pack to remove the parachute. Defendant was ultimately removed from the ledge and arrested.

Following his arrest, defendant made several statements, described in the People's voluntary disclosure form. In these

statements defendant indicated that the attempted jump was the culmination of a long term dream, that he had carefully planned the jump over a 10-year period, that he never meant to harm anyone, and that he had studied the traffic patterns of the avenue below and timed his jump so he would land when the traffic lights on the avenue below were red and the avenue was clear. However, defendant did not testify before the grand jury, nor was any other evidence presented there regarding the careful planning he described in his statements. As indicated, defendant was indicted for reckless endangerment in the first degree.

In his motion to dismiss the indictment, defendant argued that the form of the indictment was insufficient, that the evidence before the grand jury was legally insufficient, and that the charge of reckless endangerment was legally inappropriate in that nothing he is alleged to have done could reasonably be perceived as constituting a depraved indifference to human life, or creating a grave risk of death to another person. He further argued that there is no law in this state making it illegal to jump off a bridge or a building, and that the concept of reckless endangerment does not encompass such conduct, particularly since, he suggested, the act of making such a jump constitutes constitutionally protected expression.

The motion court granted dismissal of the indictment. While acknowledging that defendant's conduct was dangerous and ill-conceived, it held that the conduct did not rise to the level of depraved indifference as that term is defined in *People v Feingold* (7 NY3d 288 [2006]), as it did not suggest moral depravity or wickedness. The court remarked that defendant, an experienced BASE jumper, attempted this stunt while wearing a parachute and after studying the traffic light patterns of the avenue below to maximize chances of landing when traffic was stopped, which, according to the court, suggested that rather than indifference to the risk of harm to others, defendant took affirmative steps to mitigate the risk and ensure the safety of others. The court concluded that "[h]owever outrageous this stunt was the evidence before the grand jury demonstrates that defendant took steps to avert risk to others" (14 Misc 3d 1227[A], 2007 NY Slip Op 50192[U], *4, citing *People v Reagan*, 94 NY2d 804 [1999]). It further concluded, without discussion, that the testimony did not support reducing the charge to the lesser included offense of reckless endangerment in the second degree under CPL 210.20 (1-a).

As an initial matter, as the People now concede, the motion court correctly observed that the grand jury proceedings were

defective to the extent that the mens rea element of reckless endangerment in the first degree was incorrectly explained to the jurors. The Assistant District Attorney who presented the matter incorrectly instructed the grand jurors using the standard set forth in *People v Register* (60 NY2d 270 [1983]), even though at the time of the proceedings the standard enunciated in *Register* had been overruled by, and a new standard pronounced in *People v Feingold* (7 NY3d 288 [2006], *supra*). As such, the grand jurors were erroneously led to believe that they could find legally sufficient evidence to indict for first degree reckless endangerment without any showing that defendant possessed the culpable mens rea required under *Feingold*, that is, "an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*id.* at 296, quoting dissenting op at 298, quoting *People v Suarez*, 6 NY3d 202, 214 [2005]).

Under CPL 210.35 (5) a grand jury proceeding is defective when "the integrity thereof is impaired and prejudice to the defendant may result." Where "prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the Grand Jury," indictments must be dismissed under CPL 210.20 (1) (c) (*see People v Huston*, 88 NY2d 400, 409 [1996]). Although a prosecutor instructing grand jurors on the law is not held to the same standards of exactitude as a trial court charging a petit jury, and must only provide the grand jury "with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime" (*People v Calbud, Inc.*, 49 NY2d 389, 394-395 [1980]), the error here concerned an essential element of the charge of reckless endangerment in the first degree, and therefore impaired the integrity of the grand jury's consideration of that charge (*see* CPL 210.35 [5]; *People v Huston*, 88 NY2d 400 [1996], *supra*). Accordingly, insofar as the grand jury indicted for first degree reckless endangerment using an incorrect standard, the grand jury proceedings were defective. This error, however, has no impact on the lesser included offense of second-degree reckless endangerment, which does not entail the mental state of depraved indifference.

The motion court's dismissal of the indictment was not founded only upon the error in the legal instructions. It was primarily founded upon the conclusion that the evidence was

legally insufficient to sustain the offense charged *and* the lesser included offense of reckless endangerment in the second degree.

Initially, we reject as specious defendant's suggestion that nothing in the Penal Law prohibits parachuting off tall buildings and into the middle of a busy city street; such conduct is clearly encompassed within the reckless endangerment statutes, which are aimed generally at "perilous conduct" (*see People v Davis*, 72 NY2d 32, 37 [1988]).

In view of the position taken by the People in their appellate brief, in which they seek reinstatement of the indictment only to the extent it reflected the lesser included offense of reckless endangerment in the second degree, it is inappropriate to address at this juncture whether the evidence they presented could have been sufficient to support an indictment for reckless endangerment in the first degree based upon a proper charge. But, as to the lesser included offense of reckless endangerment in the second degree, we agree with the People that the evidence before the grand jury was sufficient to sustain it.

To warrant dismissal pursuant to CPL 210.20 (1) (b), a defendant bears the burden of making a clear showing that all the evidence presented to the grand jury is legally insufficient to support the charges *or any lesser included offense* (*People v Guzman*, 180 AD2d 469 [1992]). The court must view the evidence in the light most favorable to the People (*People v Warner-Lambert Co.*, 51 NY2d 295, 299 [1980], *cert denied* 450 US 1031 [1981]). The term "legally sufficient" requires competent evidence which, if accepted as true, will establish the elements of a charged offense and the defendant's commission thereof (*People v Jennings*, 69 NY2d 103, 115 [1986]).

The motion court incorrectly assessed the sufficiency of the evidence using not only the evidence presented to the grand jury, but also statements made by the defendant to the police regarding his training, experience and expertise, and the measures he purportedly took in an effort to mitigate the risk of harm to others and himself, *which statements were not before the grand jury*. When assessing the legal sufficiency of an indictment, the court must limit its examination of the evidence to that which was presented to the grand jury (*see* CPL 210.20 [1] [b]; *People v Garson*, 6 NY3d 604, 613 [2006]).

Reckless endangerment in the second degree (Penal Law § 120.20), a lesser included offense of reckless endangerment in the first degree (Penal Law § 120.25), entails recklessly engaging in conduct which creates a substantial risk of serious physi-

cal injury to another person. A person acts recklessly when he or she is aware of and consciously disregards a substantial and unjustifiable risk, and that risk is of such nature and degree that disregarding it is a gross deviation from the standard of conduct that a reasonable person would observe in the situation (Penal Law § 15.05 [3]). Although an individual may be convicted of reckless endangerment after causing actual harm to another, actual harm is not necessary (*People v Davis*, 72 NY2d at 36).

The grand jury's determination that there was sufficient evidence to charge defendant with having recklessly engaged in conduct which created a grave risk of death to another person, with the mental state described in *People v Register* (60 NY2d 270 [1983], *supra*), necessarily encompassed the determination that he recklessly engaged in conduct which created a substantial risk of serious physical injury to another person. Not only was this determination necessarily part of the grand jury's findings, but there was no improper jury charge regarding the elements of this crime to undermine that determination, and the evidence was plainly sufficient to support it.

We reject the motion court's conclusion that the very success of the security guards in restraining defendant made it physically impossible for defendant to have put the people below at risk. Even defendant's aborted efforts were enough. Climbing over the security fence, to a position where, according to one security guard, he appeared ready to jump off the building, in itself put many people at risk. Not only were 30-to-40-mile-per-hour winds gusting out of the north, making mishaps more likely, but even an accidental misstep, or a hand or object reaching through the security fence and accidentally pushing, rather than grabbing him, could have sent defendant into the air, where a faulty parachute would result in a likelihood of death not only for defendant but for people on the ground. Even a properly functioning parachute that landed a jumper safely might cause a variety of accidents. There were also risks that an object carried by or attached to defendant, or an object deployed through the fence by security guards to prevent defendant from jumping, could accidentally fall, and any such object would become a lethal projectile along the way. Additionally, the actions defendant took created a risk of serious physical injury to building security staff whose job it was to try to stop him from making the jump, and even bystanders in the vicinity were endangered by the ensuing struggle.

Because the evidence before the grand jury was sufficient to establish the elements of reckless endangerment in the second degree, the motion court should have ordered the reduction of the charge to that offense pursuant to CPL 210.20 (1-a), rather than dismissing the indictment entirely. We observe that under CPL 210.20 (6), upon entry of such an order the People have several options as to further proceedings.

Accordingly, the order of the Supreme Court, New York County (Michael R. Ambrecht, J.), entered on or about January 17, 2007, which granted defendant's motion to dismiss the indictment charging him with reckless endangerment in the first degree, should be reversed, on the law, the indictment reinstated, and the matter remanded to Supreme Court for entry of an order pursuant to CPL 210.20 (1-a) reducing the indictment to allege the lesser included offense of reckless endangerment in the second degree.

TOM, J.P., FRIEDMAN and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 17, 2007, reversed, on the law, the indictment reinstated, and the matter remanded to Supreme Court for entry of an order pursuant to CPL 210.20 (1-a) reducing the indictment to allege the lesser included offense of reckless endangerment in the second degree.