[944 NE2d 1130, 919 NYS2d 491]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL EDWARD PRINDLE, Appellant.

Argued January 5, 2011; decided February 22, 2011

**APPEARANCES OF COUNSEL**

*Timothy P. Donaher, Public Defender*, Rochester (*Drew R. Du-Brin* of counsel), for appellant.

*Michael C. Green, District Attorney*, Rochester (*Leslie E. Swift* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be modified by reducing defendant's conviction of depraved indifference murder (Penal Law § 125.25 [2]) to manslaughter in the second degree (Penal Law § 125.15 [1]), and by remitting the case to Supreme Court for resentencing and, as so modified, affirmed.*

On October 9, 2004, defendant and a separately charged individual were in the process of stealing two snowplows located behind a business in Brighton, New York when police officers responded to the scene. Defendant immediately jumped into the driver's seat of his van while his partner sat on the passenger side. Defendant sped away and a police chase ensued, ultimately resulting in defendant smashing his van into another vehicle and killing a passenger therein.

At the conclusion of the People's case, defendant moved for a trial order of dismissal. He argued that "there has been insufficient evidence to demonstrate a depraved indifference reckless conduct on the part of [defendant]." Supreme Court denied the motion. Defendant renewed his motion at the close of trial, which the court likewise denied.

Supreme Court submitted the case to the jury and instructed it on both the elements of depraved indifference murder and the lesser included offense of second degree manslaughter. In its charge, the court explained that, to find defendant guilty of depraved indifference murder, the jury would have to find,

---

\* A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]).

A person is guilty of second degree manslaughter when "[h]e recklessly causes the death of another person" (Penal Law § 125.15 [1]).

"under circumstances evincing a depraved indifference to human life, he . . . recklessly engage[d] in conduct which create[d] a grave risk of death to another person and thereby cause[d] the death of that person . . .

"[W]hen conduct is engaged in recklessly, under circumstances evincing a depraved indifference to human life, the law regards that conduct . . . as so serious, so egregious as to be the equivalent of intentional conduct. Conduct evincing a depraved indifference to human life must be imminently dangerous and present a very high risk of death. It is conduct which is so wanton, so deficient in moral sense and concern, so devoid of regard for the life or lives of others as to equal in blameworthiness intentional conduct which would produce the same result.

"In determining whether a person's conduct evinced a depraved indifference to human life, a jury would have to decide whether the circumstances surrounding that conduct, when objectively viewed, made the conduct so uncaring, so callous, so dangerous and so inhuman as to demonstrate an attitude of total and utter disregard for the life of the person or persons in danger."

Defendant made no objection to the court's charge nor to subsequent instructions given to the jury resulting from juror inquiries.

On appeal, defendant concedes that the evidence sustains a conviction for second degree manslaughter, but disputes the legal sufficiency of his depraved indifference murder conviction. When engaging in legal sufficiency review, we generally measure the evidence against the jury charge given without objection or exception (*see People v Ford*, 11 NY3d 875, 878 [2008]; *People v Sala*, 95 NY2d 254, 260 [2000]). Supreme Court tailored its jury charge based on the standard set forth in *People v Register* (60 NY2d 270 [1983]), which, at the time of defendant's trial, had not yet been explicitly overruled (*see e.g. People v Suarez*, 6 NY3d 202 [2005]). The *Register* standard that "depraved [indifference] murder is distinguishable from manslaughter, not by the mental element involved but by the objective circumstances in which the act occurs" (60 NY2d at 278), however, was explicitly overruled by *People v Feingold* (7 NY3d

288 [2006]), where we held for the first time that "depraved indifference to human life is a culpable mental state" (7 NY3d at 294).

Defendant argues that, even though he did not object to the charge as given, his trial order of dismissal motion adequately anticipated and preserved his argument that the evidence at trial was legally insufficient under *Feingold* (*see People v Jean-Baptiste*, 11 NY3d 539, 542 [2008]). Without passing on defendant's argument concerning the adequacy of his trial order of dismissal motion and simply applying Supreme Court's charge as given without exception, we conclude that the evidence adduced at trial does not support the jury's conclusion that defendant evinced a depraved indifference to human life (*cf. People v Gomez*, 65 NY2d 9, 12 [1985] [the defendant's conviction for two counts of depraved indifference murder legally sufficient where, after striking two cars while driving at an excessive speed, the defendant drove onto a sidewalk, killed one child, refused to apply his brakes, and killed a second child]). Here, at most, the evidence adduced was legally sufficient to support a finding of reckless manslaughter.

We have considered defendant's remaining arguments and find that they are without merit.

PIGOTT, J. (dissenting). A young woman returning from a baby shower is dead because this defendant, who was concerned about being arrested for the theft of a $400 snowplow blade, led police on a 2½-to-4-mile chase from the Town of Brighton into the City of Rochester, running at least five red lights, repeatedly driving at high speeds and in the lanes of oncoming traffic before plowing into the rear driver's side of the victim's vehicle. She did not die immediately, however, arriving at the hospital in a comatose state with a severe head injury, broken ribs and a broken pelvis, succumbing to her injuries five days later. Because I disagree with the majority's conclusions that such conduct did not amount to depraved indifference murder under the standard delineated in *People v Register* (60 NY2d 270 [1983], *cert denied* 466 US 953 [1984]), I dissent.

On the fateful day of October 9, 2004, the occupant of an apartment overlooking the parking lot of a window cleaning business in the Town of Brighton contacted police after observing defendant and his accomplice, Jeffrey Kells, lifting a snowplow blade into the back of a van. When Officer Brad Steve from the Brighton Police Department arrived, he observed defendant and Kells jumping into a van, which had a snowplow

protruding from the rear. Officer Steve activated his lights and siren and entered the driveway. The van drove past his patrol car and sped toward the City of Rochester. The officer observed the van driving "erratically, increasing in speed, weaving inside the two lanes, [and] crossing over the double solid line numerous times."

As the van approached one major intersection, it increased its speed, weaved into the left hand passing lane and barreled through a red light, causing the traffic with the right-of-way to come to a sudden stop. The van proceeded toward another major intersection near the Brighton/Rochester border. Officer Steve observed the van "again driving erratically, speeding, increasing speed, going around a double solid yellow line" into oncoming traffic, nearly hitting other vehicles and causing them to swerve and/or stop. Rather than stopping, however, the van raced through another red light at that intersection—where two major thoroughfares in the City of Rochester met—at approximately 65 miles per hour. In the interest of safety, the officer deactivated his lights and siren and called off the pursuit, but still followed the van at a safe distance. He also notified the Rochester Police Department of the van's entry into the city limits.

As the van approached an Interstate overpass, still going 65 miles per hour, defendant's "driving became worse," with defendant driving the van in the oncoming lane of traffic the entire time, causing vehicles with the right-of-way to make evasive maneuvers or stop. The van crossed the overpass and turned onto local streets, reaching another heavily-trafficked thoroughfare. There, the van ran a third red light and struck a truck in the intersection. The defendant nevertheless continued his flight.

Officer Steve, still following the van from what he described as a safe distance, described the traffic as "heavy." The officer then observed the van, without braking, go through a fourth red light at a major intersection; he testified that the van was "driving erratically, going around cars, crossing over a double yellow solid line, causing cars to pull over." He did not estimate the van's speed, although he opined that it was going over the posted speed limit.

Officer Steve maintained visual contact as the van continued erratically at a high rate of speed through a fifth red light. A vehicle, which had a green light, was making a left turn at this intersection. That vehicle's driver observed the van traveling

over the double solid yellow line before it slammed into the rear driver's side door. It was this vehicle in which the decedent was traveling. Defendant neither braked nor skidded, and the evidence established that defendant had adequate room to navigate around the vehicle. Defendant fled the scene and was apprehended days later; Kells was arrested trying to flee.

Defendant was charged with murder in the second degree, attempted grand larceny in the fourth degree and petit larceny and, after a jury trial, was convicted of all three. The Appellate Division affirmed.

A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). As the majority notes, the jury charge given by the trial court was based on the standard set forth in *Register*, which, at the time of this trial in November 2005, had not been overruled. Defendant did not object to this charge, and therefore "the legal sufficiency of defendant's conviction must be viewed in light of the court's charge as given without exception" (*People v Ford*, 11 NY3d 875, 878 [2008], *on remand* 67 AD3d 543 [2009], *lv denied* 13 NY3d 938 [2010]). As a result, the *Register* standard informs the sufficiency analysis in this case.

Under *Register*, the depraved indifference to human life element is not a mental state but rather refers to "the factual setting in which the risk creating conduct must occur," meaning that "the focus of the offense is not upon the subjective intent of the defendant . . . , but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct" (*Register*, 60 NY2d at 276-277 [citations omitted]). Viewing the evidence in the light most favorable to the People, there is clearly a "valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion" that defendant was guilty of depraved indifference murder (*see People v Williams*, 84 NY2d 925, 926 [1994] [citations omitted]).

Each time defendant blasted through a red light, each time he drove into the oncoming lane of traffic, defendant had the opportunity to reassess his conduct and place society's interests above his own. This he chose not to do, even when he collided with a pickup truck while running a red light a mere two intersections away from where the fatal incident occurred. The jury was presented with the following, uncontradicted proof: de-

fendant led police on a chase through residential and business districts at speeds as high as 65 miles per hour, ran at least five red lights, repeatedly drove in the oncoming lane of traffic, and collided with one vehicle before the incident at issue occurred. Rather than stopping his van after this initial collision, however, defendant "doubled down" and continued through two more red lights, driving into oncoming traffic. The driver of the vehicle testified that she was "significantly into" her turn when she observed the van over the double yellow line and driving in her lane. Based on this uncontradicted proof, a jury could have reasonably concluded that defendant's conduct was "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy" as to render defendant as culpable as one whose conscious objective was to kill (*People v Russell*, 91 NY2d 280, 287 [1998]).

Contrary to the majority's implication, this case is not factually distinct from *People v Gomez* (65 NY2d 9 [1985]). In that case, the defendant drove from a gas station into a city street at a speed of 40 miles per hour, struck a parked car and continued northbound weaving from lane to lane, striking the left side of a moving vehicle and mounting the curb of the sidewalk. The defendant drove the car partly on the sidewalk for a block and struck and killed his first victim, a boy on a bicycle. Despite his passenger's pleading that he stop, the defendant accelerated his car and mounted the opposite sidewalk where a number of people were standing, eventually killing another child. In upholding the defendant's conviction for depraved indifference murder relative to the first victim, this Court observed:

> "As to the first murder count, defendant sped out of the gas station and entered traffic on a busy New York street at a speed in excess of 40 miles per hour. After striking two cars, he continued accelerating for nearly a block, partly on a sidewalk, until he struck the first victim. These factors, *particularly the excessive speed and the failure to brake*, satisfied the depraved indifference element" (*Gomez*, 65 NY2d at 12 [emphasis supplied]).

Here, defendant's excessive speed, running of at least five red lights, his repeated driving in the oncoming lanes of traffic and failure to brake—such conduct occurring in residential and business districts while evading police for a distance of 2½ to 4 miles—satisfied the depraved indifference element under *Register*. If anything, defendant's conduct in this case was more

egregious than the conduct displayed by the defendant in *Gomez*. Indeed, "[t]he risks posed by defendant's conduct in this case and his callous indifference to them entitled the jury to conclude that his conduct placed the crime on the same level as intentional murder" (*Gomez*, 65 NY2d at 12). As a result, it is my view that defendant should not be rewarded with a reduction to the more lenient count of manslaughter in the second degree, and I would therefore affirm the judgment of conviction and sentence.

Chief Judge LIPPMAN and Judges CIPARICK, SMITH and JONES concur in memorandum; Judge PIGOTT dissents and votes to affirm in an opinion in which Judges GRAFFEO and READ concur.

Order modified, etc.