Pigott, J.
(dissenting). Once again, a person is dead because a defendant, concerned about being arrested for theft, led police on a high-speed chase through residential neighborhoods (compare People v Prindle, 16 NY3d 768, 771-775 [2011, Pigott, J., dissenting]). And, once again, the majority treats this crime with unfathomable and unjustified leniency (compare Prindle, 16 NY3d at 769-771).
After he hot-wired and stole a minivan in a residential neighborhood in Brooklyn, defendant Jose Maldonado abruptly overtook an unmarked police vehicle near the intersection of Graham Avenue and Jackson Street. Police Officer Steven Truglio signaled for defendant to stop; as the officer approached on foot, defendant put the minivan into gear and sped off up Graham Avenue. Pursued by the police vehicle, defendant quickly exceeded the local speed limit of 30 m.p.h. and drove through a red light at Meeker Avenue. He then turned right on Driggs Avenue, driving the wrong way on this one-way street, before turning onto McGuinness Boulevard. Defendant then proceeded the wrong way on another one-way street, Engert Avenue, for three blocks, before turning onto Manhattan Avenue.
Speeding north along the avenue, and accelerating, defendant encountered extremely heavy traffic on this weekday afternoon in spring. Officer Truglio observed defendant darting from his northbound lane into the southbound lane, and swerving in and out of the oncoming traffic in his effort to escape. A bystander estimated that defendant was exceeding the speed limit by 10 or 20 m.p.h., while driving north in the southbound lane.
*59 At the intersection of Manhattan Avenue and Milton Street, about half a mile to the north, defendant went through another red light, nearly striking a pedestrian — a woman who was in the process of crossing the avenue. She was able to dive out of the way of the oncoming minivan. Defendant did not even apply his brakes.[1] In fact, he continued to accelerate, and approached the intersection of Manhattan Avenue and Kent Street at about 60 m.p.h. He swerved around a driver in the northbound lane, entered the southbound lane, and barrelled head-on toward a vehicle driven by a motorist who had to wrench his car to one side to avoid a collision. That driver, stopping to recover himself, watched in his side-view mirror as defendant continued in the wrong lane and ran another red light at the India Street intersection, swerving between stopped cars waiting for the light.
It was at this intersection, Manhattan Avenue and India Street, that defendant struck a pedestrian, Violet Kryzak, 37, killing her. Kryzak was crossing Manhattan Avenue, with the pedestrian light in her favor. Her body flew into the air upon impact and landed over 165 feet, or almost one block, away from the point of collision. A witness who saw the moment of impact estimated that defendant was driving at 70 m.p.h., while another bystander thought his speed was closer to 80 m.p.h. It is clear from the testimony that defendant first swerved from the northbound to the southbound lane, to get around northbound vehicles stopped for the traffic light, and then immediately swerved back into the northbound lane, so as not to collide with stopped traffic straight ahead in the southbound lane. At this point, he slammed into Mrs. Kryzak.[2]
Officer Truglio and his colleagues immediately stopped in order to attend to Kryzak. Defendant, however, did not brake, instead speeding away at what another bystander described as highway-type speed, still speeding north in the southbound lane. At the Dupont Street intersection, five blocks to the north, the driver of a pickup truck saw defendant heading towards him *60 at what he estimated to be as much as 70 m.p.h. The windshield of defendant’s vehicle was caved in on the passenger side. The truck driver swerved, towards other oncoming traffic, to avoid a collision with the minivan, which finally crashed into parked vehicles.
Defendant jumped out and started running along Dupont Street, pursued by civilians. Eventually a police officer took him into custody. Defendant waived his Miranda rights and made statements to the police.
There is no dispute as to the standard in this post-Feingold case. “[T]he decisive question is whether defendant acted with the state of mind required by the depraved indifference murder statute — an utter disregard for the value of human life” (People v Taylor, 15 NY3d 518, 523 [2010] [internal quotation marks omitted]). To be guilty of depraved indifference, a defendant must have a mens rea that is more than simply a willingness to take the risk that a person will die as a result of his actions (see People v Lewie, 17 NY3d 348, 359 [2011]). A defendant who is willing to take the risk that someone will die but remains fearful of that possible result is not guilty of depraved indifference murder (see id.). On the other hand, someone whose state of mind is entirely indifferent and uncaring — a defendant who does not care whether another person is killed or grievously injured as a result of his actions (see People v Barboni, 21 NY3d 393, 400 [2013]; People v Feingold, 7 NY3d 288, 296 [2006])— has the requisite mens rea.
Consequently, the question here is whether the People proved that defendant Maldonado had such a state of mind — of not caring whether a pedestrian died or was grievously injured as a result of his reckless driving. In my view, it is clear that the proof of depraved indifference was sufficient. Notably, there was no evidence that defendant slowed down at intersections; and, most notably, defendant did not stop driving through red lights or against the flow of traffic, or otherwise adjust his reckless driving behavior, after almost hitting the first pedestrian. In other words, there is no indication that defendant, though reckless, remained to some extent fearful for others’ safety (contra Lewie, 17 NY3d at 359).
Defendant contends that his actions of swerving in and out of traffic, including swerving to avoid an oncoming car just before he fatally struck Kryzak, demonstrate that he took some care to avoid a fatal collision. I strongly disagree. Swerving in and out *61 of traffic, including the maneuvers preceding the fatal impact, merely demonstrates defendant’s desire to avoid apprehension, not to avoid pedestrians. To the extent it indicates avoidance of other vehicles, it simply shows that he was not suicidal.
During the high-speed car chase, defendant drove at speeds greatly exceeding the speed limit, through red lights and in the path of oncoming traffic, to avoid police pursuit; he narrowly missed one pedestrian before striking and killing another; and he refused to change his driving behavior in the face of this encounter, when he had the opportunity to display that he cared whether or not he might strike a pedestrian. Viewing the evidence in the light most favorable to the prosecution, as we must, there is a valid line of reasoning and permissible inferences from which a rational jury — the jury in this trial — could have found that defendant’s state of mind was not extreme recklessness alone, but also utter indifference to the value of human life — that he simply did not care whether or not a pedestrian died.
Therefore, I would affirm the unanimous order of the Appellate Division, holding that the evidence of defendant’s guilt of murder in the second degree was legally sufficient.
Chief Judge Lippman and Judges Read, Smith and AbdusSalaam concur with Judge Rivera; Judge Pigott dissents in an opinion in which Judge Graffeo concurs.
Order modified by reducing defendant’s conviction of murder in the second degree to manslaughter in the second degree and remitting to Supreme Court, Kings County, for resentencing and, as so modified, affirmed.

. Although Officer Truglio testified that defendant swerved away from this pedestrian at the same time as she took evasive measures, Lieutenant Roy, sitting in the front passenger seat, did not see defendant swerve, and it appears that the woman escaped because of her athletic evasive action. In any case, defendant did not do what a person displaying the most minimal degree of care would have done, that is brake.

. Defendant told the police he “tried to swerve” when he saw Kryzak, but no witness observed any evasive measure.