■ The People of the State of New York, Respondent, v Lloyd Williams, Appellant. [55 NYS3d 381]—

Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Robbins, J.), rendered April 17, 2013, convicting him of murder in the second degree, aggravated vehicular homicide (four counts), manslaughter in the second degree, vehicular manslaughter in the first degree (three counts), aggravated vehicular assault (three counts), vehicular assault in the first degree (three counts), assault in the second degree, aggravated operating a motor vehicle while under the influence of alcohol as a felony, operating a motor vehicle while under the influence of alcohol as a felony (two counts), driving while ability impaired by drugs, driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs, aggravated unlicensed operation of a motor vehicle in the first degree, and reckless driving, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by vacating the convictions of manslaughter in the second degree, vehicular manslaughter in the first degree, vehicular assault in the first degree, aggravated operating a motor vehicle while under the influence of alcohol as a felony, operating a motor vehicle while under the influence of alcohol as a felony, driving while ability impaired by drugs, driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs, aggravated unlicensed operation of a motor vehicle in the first degree, and reckless driving, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.

On the evening of June 17, 2011, the defendant smoked marijuana until he was high, then went out with his friend, Laron Harrison, to celebrate the defendant's birthday. The defendant drank alcohol at the Phase Bar (hereinafter the bar) in Freeport into the early morning hours of June 18, 2011, became intoxicated, and was removed from the bar by a bouncer. The defendant and Harrison started a fistfight with the bouncer outside the bar, and a shot was fired from a gun. Although it is unclear from the record who fired the shot, the defendant and Harrison fled after the shot was fired. The bouncer saw the defendant drive away from the parking lot in his vehicle at ap-

proximately 3:00 a.m. A bystander and a plainclothes detective both saw Harrison get into the defendant's vehicle on a nearby street.

The detective followed the defendant's vehicle in an unmarked police car with lights and sirens activated through a residential neighborhood for approximately two miles. The detective testified that he observed the defendant consistently exceed the speed limit of 30 miles per hour, traveling at speeds between 60 and 70 miles per hour. The defendant ran several red lights and stop signs, through various intersections. The detective testified that the defendant did not slow down as he approached these red lights and stop signs. The detective described one of the intersections as a major thoroughfare, running east and west with four lanes of traffic, with a large tree blocking the view of oncoming traffic.

According to the detective, the defendant accelerated away from him while proceeding eastbound on Pine Street, a side street, reaching a speed of over 80 miles per hour. At that point, the detective stopped pursuing the defendant. Shortly thereafter, the defendant collided with a vehicle operated by Chad Whethers at the intersection of Pine Street and Guy Lombardo Avenue, a main road in Freeport. The impact split Whethers' vehicle in two, instantly killing him. A traffic engineer testified that the traffic light was generally green on Guy Lombardo Avenue, on which Whethers had been proceeding, and red on Pine Street, on which the defendant had been proceeding, unless a traffic detector or push button was activated, in which case it took at least six seconds for the light to change. Video footage from a local store located on a corner of the intersection revealed that another vehicle traveling on Guy Lombardo Avenue went through the intersection at Pine Street, only seconds before the defendant's vehicle collided with Whethers' vehicle. Notably, no skid marks were observed in the area of impact.

After the impact, the defendant's vehicle came to rest on the front lawn of a Pine Street residence about 150 feet east of the intersection. A resident, awakened by the sound of the crash, observed the defendant limp down an alleyway toward the back of the residence. The defendant was found by another detective crouching in a basement stairwell in the rear of the residence. According to that detective, the defendant's speech was slurred, his eyes were bloodshot, and he smelled of alcohol. Harrison remained in the front passenger seat of the defendant's vehicle and had to be extricated from the vehicle by the fire department. He suffered a cervical spine fracture as a result of the accident.

The defendant was arrested and transported to the hospital. A blood sample taken from him at 4:16 a.m., just over one hour after the accident, indicated that his blood alcohol content (hereinafter BAC) was 0.25% and that he tested positive for marijuana. At 9:45 a.m., the police obtained a second blood sample from the defendant pursuant to a court order and that blood sample indicated that the defendant's BAC was 0.13% and that he tested positive for marijuana.

At trial, the defendant invoked the defense of justification by necessity (Penal Law § 35.05 [2]), claiming that he was fleeing from the bouncer who was shooting at him and Harrison, and that he was also rushing Harrison to a hospital because Harrison told him that he had been shot. The defendant was convicted by a jury of murder in the second degree (depraved indifference murder), four counts of aggravated vehicular homicide, manslaughter in the second degree, three counts of vehicular manslaughter in the first degree, three counts of aggravated vehicular assault, three counts of vehicular assault in the first degree, assault in the second degree, aggravated operating a motor vehicle while under the influence of alcohol as a felony, two counts of operating a motor vehicle while under the influence of alcohol as a felony, driving while ability impaired by drugs, driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs, aggravated unlicensed operation of a motor vehicle in the first degree, and reckless driving. He was acquitted of assault in the first degree (depraved indifference assault).

Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to disprove the defendant's justification defense beyond a reasonable doubt (*see* Penal Law § 35.15 [2]; *People v Craig*, 78 NY2d 616 [1991]), and to prove the defendant's guilt of murder in the second degree (depraved indifference murder) and four counts of aggravated vehicular homicide (Penal Law §§ 125.25 [2]; 125.14 [1], [2] [b]; [3], [5]) beyond a reasonable doubt. Moreover, upon the exercise of our factual review power (*see* CPL 470.15 [5]), we are satisfied that the verdict of guilt as to those crimes was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Romero*, 7 NY3d 633, 644-645 [2006]).

A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, [such person] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]).

Depraved indifference is a culpable mental state which "is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*People v Feingold*, 7 NY3d 288, 296 [2006] [internal quotation marks omitted]). Thus, "a depraved and utterly indifferent actor is someone who does not care if another is injured or killed" (*id.* [internal quotation marks omitted]). "The mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence" (*id.*).

Here, the evidence proved beyond a reasonable doubt that the defendant recklessly engaged in conduct which created a grave risk of death to another person. First, the defendant was knowingly driving with a revoked driver license. Second, the defendant was driving while intoxicated with a BAC of approximately 0.25%, and high on marijuana. Third, the defendant engaged in a high-speed chase with the police for approximately two miles. Fourth, during this chase, the defendant sped through narrow streets of a residential neighborhood, traveling at speeds of more than double the legal limit. The defendant also ran through numerous stop signs and red traffic lights, without slowing down.

The evidence further demonstrated that prior to the crash, the defendant sped eastbound down Pine Street, a residential street with stop signs and traffic lights, reaching a speed of over 80 miles per hour. Perhaps most significantly, the compelling circumstantial evidence demonstrated that as the defendant approached a red traffic light at the intersection of Guy Lombardo Avenue, he narrowly missed another vehicle that crossed the intersection, and seconds later, without slowing down, he ran the red light and crashed into Whethers' vehicle with such force that he split the vehicle in two, instantly killing Whethers. The direct and circumstantial evidence proved that the defendant deliberately drove his vehicle into this intersection with an utter disregard for the value of human life, and thus was legally sufficient to support the determination that the defendant acted with depraved indifference (*see People v Heidgen*, 22 NY3d 259 [2013]; *People v McPherson*, 89 AD3d 752, 755 [2011], *affd sub nom. People v Heidgen*, 22 NY3d 259 [2013]; *People v Wells*, 53 AD3d 181, 189-190 [2008]).

The defendant's testimony did not warrant a different result. The defendant testified that he did not see the flashing lights of the detective's vehicle behind him, and did not hear a siren. The defendant further testified that he was unaware of the speed limit, or the speed at which he was driving. Moreover,

with respect to the stop signs and traffic lights that he encountered, the defendant testified that he "wasn't really paying attention" and was not aware that he ran any stop signs. The defendant also testified that he did not remember what happened when he reached the intersection of Pine Street and Guy Lombardo Avenue, and did not recall the crash. The defendant denied any responsibility for causing the death of Whethers, and testified that the way he drove that evening "wasn't something . . . I could control." The defendant described the accident that killed Whethers as "a coin toss . . . [a]nybody could have lost their life in that accident. I could have also died."

The cases cited by our dissenting colleague do not dictate a different result as they are distinguishable on the facts. In *People v Maldonado* (24 NY3d 48 [2014]), the defendant was not driving while intoxicated or high on drugs, and most importantly, during the high speed chase, the defendant made an effort to avoid hitting other vehicles while evading the police. The Court of Appeals found that a rational jury could not have reasonably found the defendant guilty of depraved indifference murder beyond a reasonable doubt because "[t]his conscious avoidance of risk is the antithesis of a complete disregard for the safety of others" (*id.* at 54). Here, there was no evidence that the defendant made any effort to avoid hitting other vehicles during the chase. Indeed, the critical video footage, and other evidence from the crash scene, demonstrated that the defendant sped into the intersection without braking or swerving, notwithstanding that a car with its headlights on was approaching the intersection, which the defendant missed by mere seconds, only to strike Whethers' vehicle immediately thereafter.

*People v Valencia* (14 NY3d 927 [2010]) involved an intoxicated motorist traveling at a high rate of speed in the wrong direction on a Long Island parkway when he crashed head-on into another vehicle and then careened into another car. In rendering the verdict that the defendant was guilty of assault in the first degree pursuant to Penal Law § 120.10 (3), the trial court in *Valencia*, after a nonjury trial, stated that the evidence established that the defendant was highly intoxicated at the time of the accident and "was simply *oblivious* to all of the indices of alarm and warning attendant to his dangerous travel on the parkway" (emphasis added). However, the court also found that the defendant created a grave risk of harm by becoming extremely intoxicated knowing that he would eventually drive himself home from his friend's house. This Court

vacated the first-degree assault conviction, concluding that the defendant's state of mind before he drove home was too remote in time from the car crash (*see People v Valencia*, 58 AD3d 879 [2009], *affd* 14 NY3d 927 [2010]). The Court of Appeals affirmed, finding that the evidence established only that the defendant was extremely intoxicated, and did not establish that he acted with the culpable mental state of depraved indifference. Unlike *Valencia*, the evidence here established that the defendant was neither totally oblivious nor incapable of comprehending the gravity of his actions due to his intoxication. Indeed, after the crash, the defendant fled his vehicle, which had been rendered inoperable, and hid in a basement stairwell in the rear of a nearby residence. This evidence demonstrated the defendant's consciousness of guilt and that he comprehended the gravity of his actions due to his intoxication. It also bears noting that in *Valencia*, the defendant was traveling on a parkway, while here, the defendant was traveling at high rates of speed on narrow, residential streets.

Viewing the facts of this case in their totality, we disagree with our dissenting colleague's finding that the defendant's conduct was not sufficiently egregious to support a conviction of depraved indifference murder. Indeed, the defendant's conduct here is consistent with the conduct of the defendants Heidgen, Taylor, and McPherson (*see People v Heidgen*, 22 NY3d 259 [2013]) wherein the Court of Appeals found legally sufficient evidence to support their convictions for depraved indifference murder. The defendants in those three cases, as the defendant in this case, all essentially proceeded recklessly at full speed, without slowing or swerving, into their victims, without any care as to the grievous harm that could occur. Cognizant of our role to view the evidence in the light most favorable to the prosecution, we find that the evidence was legally sufficient to prove the defendant's guilt of depraved indifference murder. Moreover, the verdict of guilt of depraved indifference murder was not against the weight of the evidence.

Contrary to the People's contention, the defendant's challenge to the legal sufficiency of the evidence of depraved indifference murder based upon his argument that his intoxication negated the culpable mental state of depraved indifference to human life is preserved for appellate review, as the defendant moved, albeit unsuccessfully, for dismissal on this ground at the close of the People's case (*see People v Finch*, 23 NY3d 408 [2014]; *People v Soto*, 8 AD3d 683 [2004]). Nevertheless, the record does not support an inference that the defendant's

mental state was so affected by his consumption of alcohol that he did not possess the requisite mental state (*see People v Heidgen*, 87 AD3d 1016, 1022 [2011], *affd* 22 NY3d 259 [2013]; *cf. People v Valencia*, 14 NY3d 927 [2010]).

Contrary to the defendant's contention, the verdict finding him guilty of depraved indifference murder with respect to the death of Whethers was not inherently inconsistent and repugnant to the verdict finding him not guilty of depraved indifference assault with respect to Harrison (*see People v Muhammad*, 17 NY3d 532, 538-539 [2011]; *People v Tucker*, 55 NY2d 1 [1981]).

As the People correctly concede, the defendant's convictions of vehicular manslaughter in the first degree, aggravated operating a motor vehicle while under the influence of alcohol as a felony, operating a motor vehicle while under the influence of alcohol as a felony, driving while ability impaired by drugs, driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs, aggravated unlicensed operation of a motor vehicle in the first degree, and reckless driving must be vacated and those counts of the indictment dismissed as inclusory concurrent counts of the convictions of aggravated vehicular homicide (*see* CPL 300.40 [3] [b]; Penal Law §§ 125.14 [1], [2] [b]; [3]; 125.13 [1], [2] [b]; [3]; Vehicle and Traffic Law §§ 511 [3] [a] [i]; 1192 [2-a] [a]; [2], [3], [4]; 1212). Moreover, as the People correctly concede, the defendant's convictions of vehicular assault in the first degree must be vacated and those counts of the indictment dismissed as inclusory concurrent counts of the convictions of aggravated vehicular assault (*see* CPL 300.40 [3] [b]; Penal Law §§ 120.04-a [1], [3], [4]; 120.04 [1], [3], [4]), and the defendant's conviction of manslaughter in the second degree must be vacated and that count of the indictment dismissed as an inclusory concurrent count of depraved indifference murder (*see* CPL 300.40 [3] [b]; Penal Law §§ 125.15 [1]; 125.25 [2]).

The sentences imposed on the convictions of murder in the second degree and aggravated vehicular homicide were not excessive (*see People v Suitte*, 90 AD2d 80 [1982]).

Contrary to the defendant's contention, raised at points two and four of his pro se supplemental brief, he was not deprived of the effective assistance of counsel, as defense counsel provided meaningful representation (*see People v Benevento*, 91 NY2d 708 [1998]; *People v Baldi*, 54 NY2d 137 [1981]).

The defendant's remaining contentions regarding the grand jury proceeding, raised in point four of his pro se supplemental brief, are without merit. Rivera, J.P., Roman and LaSalle, JJ., concur.

Leventhal, J., concurs in part and dissents in part, and votes to modify the judgment, on the law, by vacating the convictions of murder in the second degree, vehicular manslaughter in the first degree, vehicular assault in the first degree, aggravated operating a motor vehicle while under the influence of alcohol as a felony, operating a motor vehicle while under the influence of alcohol as a felony, driving while ability impaired by drugs, driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs, aggravated unlicensed operation of a motor vehicle in the first degree, and reckless driving, vacating the sentences imposed thereon, and dismissing those counts of the indictment, and to affirm the judgment as so modified, with the following memorandum: Since I believe that the evidence was legally insufficient to support the defendant's conviction of depraved indifference murder, I respectfully dissent in part.

"A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007] [internal quotation marks omitted]). "A sufficiency inquiry requires a court to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained [their] burden of proof" (*id.* at 349).

A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, [such person] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). Depraved indifference is a culpable mental state which "is best understood as an utter disregard for the value of human life" (*People v Feingold*, 7 NY3d 288, 296 [2006] [internal quotation marks omitted]). "Reflecting wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts, depraved indifference is embodied in conduct that is so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to render the actor as culpable as one whose conscious objective is to kill" (*People v Suarez*, 6 NY3d 202, 214 [2005] [internal quotation marks omitted]). "Quintessential examples are firing into a crowd; driving an automobile along a crowded sidewalk at high speed; opening the lion's cage at the zoo; placing a time bomb in a public place; poisoning a well from which people are ac-

customed to draw water; opening a drawbridge as a train is about to pass over it and dropping stones from an overpass onto a busy highway" (*id.* [citations omitted]). "[I]ntoxicated driving cases in general, although clearly examples of dangerous behavior, are not thought of as 'quintessential' cases of depraved indifference" (*People v Heidgen*, 22 NY3d 259, 276 [2013]).

In *People v Heidgen*, the Court of Appeals, while stating that "intoxicated driving cases that present circumstances evincing a depraved indifference to human life are likely to be few and far between," found that the "evidence in each of these unusually egregious cases was legally sufficient to support the convictions" (*id.* at 267). The defendant Heidgen "drove the wrong way on the highway for over two miles without reacting to other drivers coming at him, car horns, or wrong way signage. Perhaps most significantly, more than one witness testified that defendant appeared to follow, or track, the headlights of oncoming vehicles" (*id.* at 277). The jury reasonably could have concluded that defendant Heidgen drove knowing that he was on the wrong side of a highway, and that he "engage[d] in what amount[ed] to a high speed game of chicken" (*id.*).

The defendant Taylor drove on a local road at speeds between 80 and 90 miles per hour, without headlights, on the wrong side of the road, and struck a pedestrian who was crossing the street (*id.* at 271-272). Although she perceived at least some of the obstacles in her path, notably the pedestrian victim prior to striking him, the defendant Taylor, who was wearing her seat belt, did not slow down, sound her horn, or make any attempt to swerve to avoid the pedestrian (*see id.* at 272, 278). After striking the pedestrian, and without slowing, the defendant Taylor continued driving in the lane for oncoming traffic, ran a red light, and struck a vehicle that was stopped at that light, injuring the vehicle's occupants (*see id.* at 272).

The defendant McPherson drove at excessive speed in the wrong direction on the Southern State Parkway for approximately five miles (*see id.* at 273, 279). During that time— more than four minutes—he did not appear to apply his brakes and several oncoming cars swerved to avoid him (*see id.* at 279). He also passed numerous signs that should have alerted him that he was traveling in the wrong direction (*see id.*). In addition, he did not slow down or pull over in response to a truck driver sounding his air horn (*see id.*).

In contrast, in *People v Maldonado* (24 NY3d 48, 49-50 [2014]), the Court of Appeals "conclud[ed] that the evidence was legally insufficient to support defendant's conviction for

depraved indifference murder because the circumstances of this high-speed vehicular police chase d[id] not fit within the narrow category of cases wherein the facts evince a defendant's utter disregard for human life." There, the defendant consistently drove well above the speed limit of 30 miles per hour and violated numerous traffic rules as he attempted to evade capture by the police (*see id.* at 50). The defendant, while running a red light, narrowly avoided hitting a pedestrian in the crosswalk, and, instead of applying the brake or slowing down, the defendant accelerated north and again swerved across the double-yellow lines into the southbound lane to avoid slower moving vehicles (*see id.*). The defendant did not slow down when he entered the opposing lane of traffic and, as a result, a driver going south had to swerve to the side of the road to avoid a collision (*see id.*). While running a third red light, the defendant struck a pedestrian in the crosswalk (*see id.*). The pedestrian died at the scene (*see id.* at 51). The defendant continued accelerating north, again swerving into the southbound lane, causing a driver headed south to swerve into the northbound lane to avoid a head-on collision with the defendant's vehicle (*see id.*). The chase ended when the defendant crashed his vehicle into a parked car to avoid hitting other vehicles (*see id.*).

The Court of Appeals majority in *Maldonado* stated that the "[d]efendant's reckless driving does not, on its own, establish the requisite mens rea of depraved indifference" (*id.* at 55). "If careless and unsafe driving were enough to meet this requirement, then we would have affirmed the defendant's conviction of depraved indifference murder in *People v Prindle* (16 NY3d 768 [2011])" (*id.*). In *Prindle*, the defendant led the police on a high-speed chase along highways and residential streets, while he sped, drove erratically, crossed double-yellow lines into oncoming traffic, and wove into the passing lane (*see People v Maldonado*, 24 NY3d at 55, citing *People v Prindle*, 16 NY3d at 771-772 [Pigott, J., dissenting]). The defendant also barreled through several red lights and caused the drivers of other cars to swerve or stop to avoid a collision; after the police deactivated their lights and siren, the defendant continued to speed, swerved into oncoming traffic, turned onto local streets, ran a red light, and struck a truck (*see People v Maldonado*, 24 NY3d at 55, citing *People v Prindle*, 16 NY3d at 772-773). Thereafter, although he had room to navigate around it, the defendant hit another car and killed one of its occupants (*see People v Maldonado*, 24 NY3d at 55, citing *People v Prindle*, 16 NY3d at 773). Nevertheless, in applying the trial court's charge as given without objection—which charge was based on the subse-

quently overruled standard set forth in *People v Register* (60 NY2d 270 [1983], *overruled People v Feingold*, 7 NY3d 288 [2006])—the Court of Appeals held that the "evidence adduced at trial does not support the jury's conclusion that defendant evinced a depraved indifference to human life" (*People v Prindle*, 16 NY3d at 771).

To similar effect is *People v Valencia* (14 NY3d 927 [2010]). In *Valencia*, the Court of Appeals majority, in a memorandum, held that there was insufficient evidence to support a conviction of depraved indifference assault (*see id.*). "The trial evidence established only that defendant was extremely intoxicated and did not establish that he acted with the culpable mental state of depraved indifference" (*id.* at 927-928). Judge Graffeo, concurring, stated that the "[d]efendant's blood alcohol level was about three times the legal limit when he drove at night in the wrong direction on a Long Island parkway at a high rate of speed. He continued on this course despite attempts by oncoming drivers to warn him of the danger he was creating" (*id.* at 928 [Graffeo, J., concurring]). "After approximately four miles, defendant crashed head-on into another vehicle and then careened into another car. Defendant's response after being informed that he had injured other people was: 'I don't know and I don't care' " (*id.*).

Here, despite the pronouncement of Chief Judge Lippman in *Heidgen*, that "intoxicated driving cases that present circumstances evincing a depraved indifference to human life are likely to be few and far between" (*People v Heidgen*, 22 NY3d at 267), once again we have a case where the People sought a depraved indifference murder conviction for an intoxicated driver. But the case at bar is not an "unusually egregious case[ ]" (*id.*) where the evidence was legally sufficient to support the murder conviction. The majority recounts that the defendant, while drunk, high, and trying to evade the police, drove for over two miles through the streets of a residential neighborhood, traveling at speeds more than double the speed limit, ran through numerous stop signs and red traffic signals, and, seconds after nearly striking one vehicle in the vicinity of an intersection, crashed into Chad Whethers' vehicle, splitting Whethers' vehicle in two and instantly killing Whethers. Consistent with *Maldonado, Heidgen, Prindle*, and *Valencia*, the circumstances in this case do not fit within the narrow category of cases where the facts evince a defendant's utter disregard for human life. The defendant did not, for example, drive on the wrong side of a road or highway and did not engage in what amounted to a high-speed game of "chicken." The defend-

ant's failure to slow down in the seconds between the time he narrowly missed another vehicle and the time he struck Whethers' vehicle is not analogous to failing to slow down after striking a pedestrian or vehicle and does not reveal a depravedly indifferent mental state.

Notably, the defendant was convicted of four counts of aggravated vehicular homicide. Aggravated vehicular homicide is a class B felony and carries a penalty of up to 25 years imprisonment (*see* Penal Law §§ 70.00 [2] [b]; 125.14). Judge Read, dissenting in *Heidgen*, wrote that "[i]n fashioning this crime [aggravated vehicular homicide], the legislature was, at least in part, responding to prosecutors' pleas that '[r]ecent court decisions [i.e., *Feingold* and the decisions leading up to it] ha[d] *so limited the application of the depraved indifference statutes to vehicular crimes as to make them inapplicable*'" (*People v Heidgen*, 22 NY3d at 286 [Read, J., dissenting], quoting Letter from District Attorneys Assn. of the State of N.Y., June 15, 2007 at 16, Bill Jacket, L 2007, ch 345 [pertaining to SB 5517, AB 8791]). Judge Read also commented, "the legislature has addressed the proper standards for assessing the culpability of drunk drivers who cause fatalities, and the proper measure of their punishment. And it did not choose to do so by amending the second-degree murder statute" (*People v Heidgen*, 22 NY3d at 286).

The case at bar illustrates what Judge Smith warned of in his dissent in *Heidgen*: "Cases in which intoxicated drivers kill innocent people are among the most inflammatory, and thus among the most likely to generate depraved indifference murder convictions where a conviction of a lesser (but still serious) crime is all that is warranted" (*id.* at 281 [Smith, J., dissenting]). The defendant deserves to be held culpable for Whethers' death. However, the defendant's conduct behind the wheel, though reckless, selfish, and stupid, was not "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to render the [defendant] as culpable as one whose conscious objective is to kill" (*People v Suarez*, 6 NY3d at 214 [internal quotation marks omitted]).

Accordingly, I would modify the judgment by, inter alia, vacating the conviction of murder in the second degree, vacating the sentence imposed thereon, and dismissing that count of the indictment. Since I would vacate the murder conviction, I would not dismiss, as an inclusory concurrent count, the conviction of manslaughter in the second degree. I agree with my colleagues in the majority in all other respects.