People v Williams (2018 NY Slip Op 04015)





People v Williams


2018 NY Slip Op 04015


Decided on June 6, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 6, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
RUTH C. BALKIN
JEFFREY A. COHEN
COLLEEN D. DUFFY, JJ.


2015-03387
 (Ind. No. 1289/02)

[*1]The People of the State of New York, respondent,
v
Eric Williams, appellant.


Jane Simkin Smith, Millbrook, NY, for appellant.
Timothy D. Sini, District Attorney, Riverhead, NY (Caren C. Manzello of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Suffolk County (Richard Ambro, J.), rendered April 3, 2015, convicting him of murder in the second degree, assault in the first degree (two counts), criminal use of a firearm in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
The testimony at the defendant's second trial, which is the subject of this appeal, revealed that Melissa Weiner, a high school student, owed the defendant approximately $300 for drugs she had agreed to sell for him. In the early morning hours of May 15, 2001, the defendant learned of Weiner's location from a friend, and the defendant, armed with a black gun, and accompanied by his girlfriend, drove to locate Weiner. Ultimately, the defendant and his girlfriend came upon a car parked a parking lot in front of a convenience store, in which Weiner sat with her friends, Melissa Singh and Candace Arena. As the defendant approached the car, Singh pulled her car out of the parking lot and drove away. The defendant pursued in his car, and a high-speed chase ensued. During the course of the chase, the defendant fired a shot from his gun, which penetrated the back windshield of Singh's car, passed through the headrest of the rear passenger seat occupied by Weiner, passed through the driver's headrest, and then exited the car through the driver's side window. As a result of the shot, Singh lost control of the car, which collided into a train trestle and flipped over, in the process ejecting and causing the death of Arena. Singh and Weiner, trapped inside the overturned car, both suffered serious injuries. The defendant immediately left the scene without summoning help. Instead, the defendant expressed to his girlfriend the hope that all three occupants of the car had perished, and traveled the next day with his girlfriend and another friend to stay at his parents' home in upstate New York for several days, during which time he discussed with friends how best to prevent discovery of his role in the crash.
The trial testimony also established that after Weiner was released from the hospital, the defendant visited her to ascertain what she recalled of the car chase and the crash. Weiner feigned complete memory loss of the incident; the defendant indicated to her that he forgave her debt and that she was fortunate to have been involved in the car crash, as he had planned on seeking her death anyway. The defendant also subsequently discussed the car crash in detail with a fellow [*2]inmate at a federal detention facility, where the defendant was incarcerated on charges unrelated to the car crash. The defendant indicated his remorse at allowing his girlfriend to live, since she could potentially testify against him with respect to the crash, as well as the unfortunate circumstance that Weiner, who could also potentially identify him, had survived the crash.
In March 2003, the defendant was originally convicted of all counts in the indictment, i.e., murder in the second degree, assault in the first degree (two counts), criminal use of a firearm in the first degree, and criminal possession of a weapon in the second degree; these convictions were upheld on appeal (see People v Williams, 50 AD3d 709). However, the defendant successfully obtained federal habeas corpus relief in September 2013 (see Williams v Artus, 2013 WL 4761120, 2013 US Dist LEXIS 126240 [ED NY, No. 11-CV-5541(JG)]), and received a new trial.
In February 2015, the defendant was tried on the same charges for the second time. At this second trial, which is the subject of this appeal, the defendant asserted that he did not have, and that the People had failed to show, a mens rea of depraved indifference sufficient to support the murder and assault counts of the indictment. The defendant was again convicted by a jury of all counts in the indictment, including depraved indifference murder and two counts of depraved indifference assault.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to prove beyond a reasonable doubt the defendant's guilt of murder in the second degree (depraved indifference murder) and two counts of assault in the first degree (depraved indifference) (Penal Law §§ 125.25[2]; 120.10[3]). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490). Upon reviewing the record here, we are satisfied that the verdict of guilt as to all counts was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, [such person] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25[2]). Depraved indifference is a culpable mental state which "is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (People v Feingold, 7 NY3d 288, 296 [internal quotation marks omitted]; see People v Spears, 154 AD3d 783, 786). Thus, "a depraved and utterly indifferent actor is someone who does not care if another is injured or killed" (People v Feingold, 7 NY3d at 296 [internal quotation marks omitted]). "The mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence" (id.).
Here, the evidence proved beyond a reasonable doubt that the defendant recklessly engaged in conduct which created a grave risk of death to another person. The defendant engaged in a high-speed chase, in the course of which he fired a gun at the fleeing car, causing Singh, the driver, to lose control of that car. Following the crash, the defendant exhibited no signs of remorse for the results of his recklessness, and even went so far as to express his disappointment that Weiner had survived the crash. The direct and circumstantial evidence proved that the defendant deliberately engaged in a high-speed chase and shot at Singh's car with an utter disregard for the value of human life, and thus, was legally sufficient to support the jury's determination that the defendant acted with depraved indifference with respect to the death of Arena and the serious injuries sustained by Singh and Weiner (see People v Heidgen, 22 NY3d 259; People v Williams, 150 AD3d 1273, 1276).
The defendant contends that the County Court erred in denying that branch of his omnibus motion which was to dismiss the indictment on the ground that the prosecutor insufficiently instructed the grand jury with respect to the mens rea required for the commission of a depraved indifference offense. The instructions given to the grand jury by the presenting prosecutor were sufficient with respect to the definition of depraved indifference (see e.g. People v Gray, 13 Misc [*3]3d 1233[A] [Suffolk County Ct]; cf. People v Corliss, 51 AD3d 79).
The defendant's contention that the County Court erred in admitting the testimony of Jose Vanderlinde from the first trial is without merit. Vanderlinde had testified at the defendant's first trial but was deported before the second trial commenced, and was barred from re-entering the United States. Under these circumstances, the court properly admitted Vanderlinde's testimony from the defendant's first trial, as the prosecutor's failure to produce the witness "was not due to indifference or a strategic preference for presenting [the witness's] testimony in the more sheltered form of [trial] minutes rather than in the confrontational setting of a personal appearance on the stand" (People v Arroyo, 54 NY2d 567, 571).
Because the evidence supported a finding that the defendant possessed a loaded firearm with an intent to use it unlawfully against Weiner, and which was separate from his mental state during the actual shooting, the sentencing court did not err in imposing a consecutive sentence with respect to the conviction of criminal possession of a weapon in the second degree (see People v Wright, 19 NY3d 359, 365-366; People v Wilson, 141 AD3d 737, 739). Since the defendant's conviction of criminal possession of a weapon in the second degree was not an inclusory concurrent count of the criminal use of a firearm in the first degree conviction, the court did not improperly fail to dismiss the weapon possession count (cf. People v Duren, 130 AD3d 842, 843; People v Rogers, 94 AD3d 1152; People v Fowler, 45 AD3d 1372, 1374).
Contrary to the defendant's contention, he was not deprived of the effective assistance of counsel, as defense counsel provided meaningful representation (see People v Benevento, 91 NY2d 708; People v Baldi, 54 NY2d 137). Nor was the defendant deprived of a fair trial by the prosecutor's references during summation to statements the defendant made after the incident. The defendant's statements were evidence of his state of mind at the time of the car chase and ensuing car crash, and the statements by the prosecutor that the defendant alleged to be prejudicial constituted fair comment on the evidence and the reasonable inferences to be drawn therefrom, and permissible rhetorical comments (see People v Mendoza, 155 AD3d 652, 653; People v Payero, 155 AD3d 653, 653-654).
The defendant's remaining contentions are without merit.
MASTRO, J.P., BALKIN, COHEN and DUFFY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court