================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 135
The People &c.,
            Respondent,
        v.
Jose Maldonado,
            Appellant.




            Joshua M. Levine, for appellant.
            Diane R. Eisner, for respondent.










RIVERA, J.:


        In this appeal, we conclude that the evidence was

legally insufficient to support defendant's conviction for

- 1 -

depraved indifference murder because the circumstances of this high-speed vehicular police chase do not fit within the narrow category of cases wherein the facts evince a defendant's utter disregard for human life. Accordingly, we modify the Appellate Division's order by reducing defendant's conviction to manslaughter in the second degree.

## I.

Police pursued defendant Jose Maldonado through the streets of Greenpoint, Brooklyn, a mixed commercial-residential neighborhood, soon after he stole a minivan from outside its owner's residence. This five-minute, midday chase led to defendant's fatal collision with a pedestrian and his prosecution and conviction for depraved indifference murder. Defendant concedes that the evidence established his reckless driving but argues that it only supports a conviction for manslaughter in the second degree. Thus, in this appeal, we are only concerned with whether the proof at trial evinced the statutorily required mental state to sustain his conviction for depraved indifference murder.

It is undisputed that defendant consistently drove well above the 30 miles per hour speed limit and violated numerous traffic rules as he attempted to evade capture by the police. The chase began when defendant ran a red light, accelerated through intersections, and went the wrong way down two one-way

streets.  The police followed with lights and sirens activated as defendant drove towards Manhattan Avenue, a major thoroughfare and commercial hub.  Defendant turned onto the avenue where, according to witnesses, there was heavy vehicular and pedestrian traffic.  As he drove north, defendant swerved into the southbound lane to pass slower vehicles and avoid congestion, and then shifted back into the northbound lane.  Witnesses estimated that he was driving 40 to 50 miles per hour.

A few blocks up Manhattan Avenue, defendant ran a second red light and narrowly avoided hitting a pedestrian in a crosswalk.  According to witnesses, defendant did not brake or slow down.  Instead, he accelerated north and again swerved across the double-yellow lines into the southbound lane to avoid slower moving vehicles.  A driver going south testified that defendant did not slow down when he entered the opposing lane of traffic.  As a consequence, the driver had to swerve to the side of the road to avoid a collision.  Once clear of congestion, defendant swerved back into the northbound lane.

A block later, defendant ran a third red light and struck a woman in a crosswalk.  The victim hit the passenger side of the minivan's windshield with such force that her body landed more than 100 feet down the avenue.  She died at the scene.  At that point, the police stopped following defendant to render aid to the victim.

Defendant continued accelerating north on Manhattan

Avenue, again swerving into the southbound lane.  A driver headed south testified that defendant sped towards him at a rate of about 50 to 70 miles per hour.  As a result, he had to swerve into the northbound lane to avoid a head-on collision with defendant.  After the driver swerved, defendant's escape routes were apparently blocked by cars in both the north and southbound lanes.

The chase ended a few blocks from where defendant struck the pedestrian, when defendant crashed the minivan into a parked car to avoid hitting other vehicles.  The impact pushed the parked car over the cars parked behind it.  Defendant, still trying to escape capture, ran out of the minivan and down a nearby street, followed by the driver who had just swerved to avoid a collision with defendant and a group of pedestrians who witnessed the crash.  The group caught up with defendant and tackled and held him until the police arrived and put him under arrest.

At the precinct, defendant admitted that he stole the minivan, exceeded the speed limit, and swerved into oncoming traffic as he fled the police.  In explaining his driving, defendant said he tried to avoid hitting cars and pedestrians, and that he did not know the neighborhood well and drove down the one-way streets by mistake.  Defendant said he was lost when he ended up on Manhattan Avenue, and that he was avoiding cars as he evaded the police.  According to defendant, he was going against

traffic and looking in his rearview mirror for the police immediately before he struck the victim. When he looked forward again, defendant said he saw the victim and that he thought he "hit the girl in the hand or something." When he saw more people and traffic two blocks later, defendant decided to crash into the parked car to avoid hurting anyone else. He also expressed remorse for his actions.

Defendant was charged with numerous crimes arising from the theft of the minivan and the death of the pedestrian, including murder in the second degree (depraved indifference murder) (Penal Law § 125.25 [2]), manslaughter in the second degree (Penal Law § 125.15 [1]), criminally negligent homicide (Penal Law § 125.10), unlawful fleeing of a police officer in a motor vehicle in the third degree (Penal Law § 270.25), unlawful fleeing of a police officer in a motor vehicle in the first degree (Penal Law § 270.35), grand larceny in the fourth degree (Penal Law §155.30 [8]), and criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [5]). At trial, defendant moved at the close of the People's case and again after defense rested, for dismissal of the depraved indifference murder charge on the ground that the People failed to establish the requisite mental state. In support of the motions, he argued that the evidence showed he repeatedly swerved to avoid hitting pedestrians and cars, indicating that his driving was merely reckless. Supreme Court denied the first

motion, reserved judgment on the second and submitted, over defendant's objection, a charge of depraved indifference murder to the jury along with other relevant charges.

The jury found defendant guilty of depraved indifference murder, unlawful fleeing of a police officer in a motor vehicle in the first degree, and grand larceny in the fourth degree.  After the verdict, defendant renewed his motion for a trial order of dismissal for depraved indifference murder. Supreme Court denied the motion, finding the evidence in this case comparable to that in People v Gomez (65 NY2d 9 [1985]), and similarly sufficient to support a conviction of depraved indifference murder.  Supreme Court sentenced defendant to an aggregate prison term of 20 years to life.

Defendant appealed, asserting legal sufficiency and weight of the evidence challenges to his depraved indifference murder conviction.  The Appellate Division affirmed (see People v Maldonado, 100 AD3d 657 [2d Dept 2012]).  A Judge of this Court granted defendant leave to appeal (21 NY3d 1044 [2013]).

II.

A.

A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life [such person] recklessly engages in conduct which creates a grave risk of death to another person, and thereby

causes the death of another person" (Penal Law § 125.25 [2]).
Depraved indifference is a culpable mental state which "is best
understood as an utter disregard for the value of human life"
(People v Feingold, 7 NY3d 288, 296 [2006] [internal quotation
marks and citation omitted]).  Thus, "a depraved and utterly
indifferent actor is someone who does not care if another is
injured or killed" (id. [internal quotation marks and citation
omitted]).  Due to the wanton nature of this mens rea, "depraved
indifference murder properly applies only to a small, and finite,
category of cases where the conduct is at least as morally
reprehensible as intentional murder" (People v Suarez, 6 NY3d
202, 207 [2005]).

A defendant who knowingly pursues risky behavior that
endangers others does not necessarily evince depraved
indifference by engaging in that conduct.  As we have explained,
"[a] person who is depravedly indifferent is not just willing to
take a grossly unreasonable risk to human life -- that person
does not care how the risk turns out" (People v Lewie, 17 NY3d
348, 359 [2011]).  "The element of depraved indifference to human
life comprises both depravity and indifference, and has meaning
independent of recklessness and the gravity of the risk created"
(People v McMillon, 31 AD3d 136, 139 [2d Dept 2006], lv denied 7
NY3d 815 [2006]).  In short, the mens rea of depraved
indifference will rarely be established by risky behavior alone.

B.

Defendant concedes that his conduct was reckless, but contends that the evidence failed to establish the depravedly indifferent mental state required by the statute.  We agree that under the circumstances of this case, there was insufficient evidence to support defendant's conviction for depraved indifference murder.

A conviction is legally insufficient where, viewing the record in the light most favorable to the prosecution, there is no "valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007]; see People v Williams, 84 NY2d 925, 926 [1994]; People v Contes, 60 NY2d 620, 621 [1983]).  Where the People fail to offer evidence evincing a defendant's utter disregard for human life there can be no basis for a jury's finding of guilt on a depraved indifference murder charge.  Without such evidence, a jury cannot reasonably conclude that the defendant did not care whether someone lived or died and as a consequence was depravedly indifferent.

Here, defendant sought to mitigate the consequences of his reckless driving because he "actively attempt[ed] to avoid hitting other vehicles" by swerving, conduct which establishes a lack of depraved indifference (People v Heidgen, 22 NY3d 259, 276 [2013]; see People v Prindle, 16 NY3d 768, 771 [2011]).  Although

defendant drove on the wrong side of the road, this conduct was episodic and part of his effort to avoid other vehicles while evading the police. This conscious avoidance of risk is the antithesis of a complete disregard for the safety of others. Defendant was unquestionably reckless, but he was not depravedly indifferent as we have defined and interpreted that state of mind. Unlike our dissenting colleagues, we conclude that, given this evidence, a rational jury could not have reasonably found depraved indifference beyond a reasonable doubt.

Our analysis in Heidgen illustrates why the facts of defendant's case are insufficient to support a different conclusion. In Heidgen, we upheld three depraved indifference murder convictions involving intoxicated drivers. We concluded the evidence sufficiently established the respective defendants' complete disregard for the risk created by their reckless driving and their total lack of concern for the life and welfare of others (see Heidgen, 22 NY3d at 267). Two of the defendants in Heidgen drove after midnight, in the early morning hours, at excessive speeds on a parkway or major thoroughfare (see id. at 268, 273). The third defendant sped on a local road late at night (see id. at 271-272). Each of the defendants drove a significant distance in the wrong direction, directly towards oncoming traffic, and did not swerve to avoid collisions with other vehicles.

In People v Heidgen, the defendant "drove the wrong way

on the highway for over two miles without reacting to other drivers coming at him," and "appeared to follow, or track, the headlights of oncoming vehicles" (22 NY3d at 277). The evidence showed that the defendant not only failed to move out of the way, but actually followed the other drivers' movements as they sought to avoid colliding with him, in what we characterized as "a high speed game of chicken" (id.). The defendant in People v Taylor, sped "without headlights, on the wrong side of the road, . . . [and] did not . . . make any attempt to swerve" (id. at 271-272). In People v McPherson, the defendant "traveled about five miles in the wrong direction . . . [and] made no attempt to brake or to avoid other vehicles" (id. at 273).

Unlike the defendants in Heidgen, defendant never tracked or followed the movements of any driver, nor did he purposefully impede another driver's efforts to avoid a collision. Defendant drove in the wrong lane for brief periods of time in order to pass other cars, not as part of a deadly game. He immediately returned to the proper lane once clear of congestion in order to avoid hitting other vehicles. Eyewitness testimony established that he repeatedly tried to avoid collisions while evading capture by the police. Although defendant swerved around cars and across lanes of traffic, he did so both to speed his flight and to avoid crashing into other vehicles or pedestrians.

Defendant's reckless driving does not, on its own,

establish the requisite mens rea of depraved indifference.  If careless and unsafe driving were enough to meet this requirement, then we would have affirmed the defendant's conviction of depraved indifference murder in People v Prindle (16 NY3d 768 [2011]), a case involving facts almost identical to those at issue before us in this appeal.  Instead, in Prindle, we reduced the defendant's conviction to manslaughter in the second degree.

In that case, the defendant led the police on a high-speed chase along highways and residential streets in Rochester (see id. at 771 [Pigott, J., dissenting]).  The defendant sped, drove erratically, crossed double-yellow lines into oncoming traffic, and wove into the passing lane (id. at 772).  He also barreled through several red lights and caused the drivers of other cars to swerve or stop to avoid a collision.  After the police deactivated their lights and siren, the defendant continued to speed, swerved into oncoming traffic, turned onto local streets, ran a red light, and struck a truck (see id. at 772-773).  Thereafter, although he had room "to navigate around [it]," the defendant hit another car and killed one of its occupants (id. at 773).  Nevertheless, we concluded that the evidence failed to "evince[] a depraved indifference to human life" (id. at 770-771).[1]

---

[1]  In Prindle, we applied the trial court's depraved indifference murder charge as given without exception, which was based on the objective-circumstances standard articulated in People v Register (60 NY2d 270 [1983]).  Nevertheless, Prindle

Like the defendant in <u>Prindle</u>, defendant here drove through a populated area, exceeded the speed limit, ran red lights, swerved across double-yellow lines into oncoming traffic, and drove the wrong way on one-way streets.  Several witnesses testified that defendant swerved to avoid hitting other cars or pedestrians.  Thus, as in <u>Prindle</u> where the defendant was "actively attempting to avoid hitting other vehicles," defendant's conduct here did not evince an utter disregard for human life (<u>Heidgen</u>, 22 NY3d at 276).

According to the People, defendant's conduct was more egregious than that found in <u>Prindle</u> and constitutes legally sufficient evidence of his depraved indifference.  In particular, the People claim that defendant showed an utter lack of concern for human life because he failed to modify his driving after narrowly missing a pedestrian.[2]  The People contend that defendant's near-miss of a pedestrian was measurably worse than the <u>Prindle</u> defendant's actual collision with a truck, because pedestrians are more vulnerable to injury than are the occupants of vehicles.  The People's creative attempt to distinguish a

---

continues to provide important guidance because where, as in that case, the evidence is insufficient to establish depraved indifference under <u>Register</u>, it will most assuredly fail to meet the <u>Feingold</u> culpable-mental state requirement.

[2] The dissent agrees.  However, as <u>Prindle</u> makes clear, attempting to avoid a collision with others, even if done in a reckless manner, is insufficient proof of depraved indifference (<u>see</u> <u>Prindle</u>, 16 NY3d at 770-771).  Rather, it suggests the opposite (<u>see</u> <u>Heidgen</u>, 22 NY3d at 276).

near-miss from an actual collision is not persuasive because, although there is a grave risk of injury in either case, gravity of risk alone is not determinative of the requisite mental state.

What matters in a depraved indifference analysis is that a defendant -- even one "willing to take a grossly unreasonable risk to human life" -- "does not care how the risk turns out" (Lewie, 17 NY3d at 359). Certainly, the defendant in Prindle was aware of the risk posed by his continued reckless driving after running a red light and striking a truck in an intersection. Nevertheless, the defendant went through two more red lights before the final collision that resulted in the victim's death. On those facts, we found the evidence legally insufficient to support a depraved indifference conviction. Here, defendant missed a pedestrian, and his driving afterwards -- characterized by his efforts to swerve away from traffic and avoid collisions -- does not evince a depravedly indifferent mental state.

The People also contend that, because he took his eyes off the road to check for police in the rearview mirror immediately before his collision with the victim, defendant's conduct was more reprehensible than that of the defendant in Prindle and shows he was depravedly indifferent. We find this momentary action insufficient to transform defendant's intent to the type of depravity required under the statute. Looking in the rearview mirror was a manifestation of defendant's continued

desire to evade the police, not his total disregard for whether his reckless driving killed someone.  A defendant may simultaneously intend to flee police and avoid striking other cars or pedestrians.  These intents are not mutually exclusive even if, as is the case here, the attempted escape is carried out in a reckless manner.  While defendant swerved into opposing lanes of traffic and exceeded the speed limit, he also "actively attempt[ed] to avoid hitting other vehicles" (Heidgen, 22 NY3d at 276).  There is no indication that his conduct in doing so was motivated solely by his intent to evade capture, regardless of the risk to human life.  The fact that defendant intended to avoid capture, as well as accidents, does not elevate the case to depraved indifference murder.

The People further speculate that defendant ended the chase by crashing the minivan into a parked car, not out of concern for the welfare of others, but because other cars were blocking his escape.  Again, without direct evidence of defendant's intent, the People essentially rely on evidence of defendant's reckless driving to establish the culpable mental state.  However, recklessness and depraved indifference are separate mens rea.  Here, assuming the People proffered evidence indicating that defendant was aware of and disregarded the substantial risk of injury or death caused by his driving, they failed to submit evidence establishing that defendant did not care whether grievous harm resulted (see Feingold, 7 NY3d at

296).  Thus, no reasonable jury could conclude that defendant was depravedly indifferent.

Nevertheless, relying on the decision of the trial court, the People contend that the facts here most closely mirror those in People v Gomez (65 NY2d at 9) and we should apply a similar analysis to uphold defendant's depraved indifference conviction.  Our analysis in Gomez, which applied the overruled Register standard, does not bind us here.  Rather, our decision in Heidgen provides the appropriate basis to analyze defendant's driving and whether there was sufficient evidence to find the requisite culpable mental state.  As our discussion of Heidgen makes clear, this case is not one of the very few wherein a defendant's "culpability is the equivalent of an intentional murderer" (Heidgen, 22 NY3d at 277).

If we accepted the People's argument, depraved indifference murder could arguably be charged in every case where a defendant killed someone during a high-speed police chase.  By its nature, a high-speed chase endangers pedestrians and other drivers and carries the potential for grave injuries and fatalities.  Defendants who take part in high-speed chases violate accepted rules of the road and drive in what is generally considered a reckless manner.  Yet, not every vehicular police chase resulting in death will take place under circumstances evincing the defendant's depraved indifference.  Cases of depraved indifference murder "are highly fact-specific and

dependent upon the individual defendant's particular mental state -- a factor that may be extremely difficult to establish" (Heidgen, 22 NY3d at 276). Where, as here, there is no additional evidence evincing a fleeing defendant's wanton disregard for the risk that the defendant's reckless flight from police poses to others, a charge for depraved indifference murder should not be submitted to the jury.

Accordingly, the Appellate Division order should be modified by reducing defendant's conviction of murder in the second degree to manslaughter in the second degree and remitting to Supreme Court for resentencing and, as so modified, affirmed.

People v Jose Maldonado

No. 135

PIGOTT, J. (dissenting):

Once again, a person is dead because a defendant, concerned about being arrested for theft, led police on a high-speed chase through residential neighborhoods (compare People v Prindle, 16 NY3d 768, 771-775 [2011] [Pigott, J., dissenting]). And, once again, the majority treats this crime with unfathomable and unjustified leniency (compare Prindle, 16 NY3d at 769-771).

After he hot-wired and stole a minivan in a residential neighborhood in Brooklyn, defendant Jose Maldonado abruptly overtook an unmarked police vehicle near the intersection of Graham Avenue and Jackson Street. Police Officer Steven Truglio signaled for defendant to stop; as the officer approached on foot, defendant put the minivan into gear and sped off up Graham Avenue. Pursued by the police vehicle, defendant quickly exceeded the local speed limit of 30 m.p.h. and drove through a red light at Meeker Avenue. He then turned right on Driggs Avenue, driving the wrong way on this one-way street, before turning onto McGuiness Boulevard. Defendant then proceeded the wrong way on another one-way street, Engert Avenue, for three blocks, before turning onto Manhattan Avenue.

Speeding north along the avenue, and accelerating,

- 1 -

defendant encountered extremely heavy traffic, on this weekday afternoon in spring. Officer Truglio observed defendant darting from his northbound lane into the southbound lane, and swerving in and out of the oncoming traffic in his effort to escape. A bystander estimated that defendant was exceeding the speed limit by 10 or 20 m.p.h., while driving north in the southbound lane.

At the intersection of Manhattan Avenue and Milton Street, about half a mile to the north, defendant went through another red light, nearly striking a pedestrian – a woman who was in the process of crossing the avenue. She was able to dive out of the way of the oncoming minivan. Defendant did not even apply his brakes.[1] In fact, he continued to accelerate, and approached the intersection of Manhattan Avenue and Kent Street at about 60 m.p.h. He swerved around a driver in the northbound lane, entered the southbound lane, and barrelled head-on toward a vehicle driven by a motorist who had to wrench his car to one side to avoid a collision. That driver, stopping to recover himself, watched in his side-view mirror as defendant continued in the wrong lane and ran another red light at the India Street intersection, swerving between stopped cars waiting for the light.

---

[1] Although Officer Truglio testified that defendant swerved away from this pedestrian at the same time as she took evasive measures, Lieutenant Roy, sitting in the front passenger seat, did not see defendant swerve, and it appears that the woman escaped because of her athletic evasive action. In any case, defendant did not do what a person displaying the most minimal degree of care would have done, that is brake.

It was at this intersection, Manhattan Avenue and India Street, that defendant struck a pedestrian, Violet Kryzak, 37, killing her.  Kryzak was crossing Manhattan Avenue, with the pedestrian light in her favor.  Her body flew into the air upon impact and landed over 165 feet, or almost one block, away from the point of collision.  A witness who saw the moment of impact estimated that defendant was driving at 70 m.p.h., while another bystander thought his speed was closer to 80 m.p.h.  It is clear from the testimony that defendant first swerved from the northbound to the southbound lane, to get around northbound vehicles stopped for the traffic light, and then immediately swerved back into the northbound lane, so as not to collide with stopped traffic straight ahead in the southbound lane.  At this point, he slammed into Mrs. Kryzak.[2]

Officer Truglio and his colleagues immediately stopped in order to attend to Kryzak.  Defendant, however, did not brake, instead speeding away at what another bystander described as highway-type speed, still speeding north in the southbound lane.  At the Dupont Street intersection, five blocks to the north, the driver of a pickup truck saw defendant heading towards him at what he estimated to be as much as 70 m.p.h.  The windshield of defendant's vehicle was caved in on the passenger side.  The truck driver swerved, towards other oncoming traffic, to avoid a

---

[2] Defendant told the police he "tried to swerve" when he saw Kryzak, but no witness observed any evasive measure.

collision with the minivan, which finally crashed into parked
vehicles.

Defendant jumped out and started running along Dupont
Street, pursued by civilians. Eventually a police officer took
him into custody. Defendant waived his Miranda rights and made
statements to the police.

There is no dispute as to the standard in this post-
Feingold case. "[T]he decisive question is whether defendant
acted with the state of mind required by the depraved
indifference murder statute – an utter disregard for the value of
human life" (People v Taylor, 15 NY3d 518, 523 [2010] [citation
and internal quotation marks omitted]). To be guilty of depraved
indifference, a defendant must have a *mens rea* that is more than
simply a willingness to take the risk that a person will die as a
result of his actions (see People v Lewie, 17 NY3d 348, 359
[2011]). A defendant who is willing to take the risk that
someone will die but remains fearful of that possible result is
not guilty of depraved indifference murder (see id.). On the
other hand, someone whose state of mind is entirely indifferent
and uncaring – a defendant who does not care whether another
person is killed or grievously injured as a result of his actions
(see People v Barboni, 21 NY3d 393, 400 [2013]; People v
Feingold, 7 NY3d 288, 296 [2006]) – has the requisite *mens rea*.

Consequently, the question here is whether the People
proved that defendant Maldonado had such a state of mind – of not

caring whether a pedestrian died or was grievously injured as a result of his reckless driving. In my view, it is clear that the proof of depraved indifference was sufficient. Notably, there was no evidence that defendant slowed down at intersections; and, most notably, defendant did not stop driving through red lights or against the flow of traffic, or otherwise adjust his reckless driving behavior, after almost hitting the first pedestrian. In other words, there is no indication that defendant, though reckless, remained to some extent fearful for others' safety (contra Lewie, 17 NY3d at 359).

Defendant contends that his actions of swerving in and out of traffic, including swerving to avoid an oncoming car just before he fatally struck Kryzak, demonstrate that he took some care to avoid a fatal collision. I strongly disagree. Swerving in and out of traffic, including the maneuvers preceding the fatal impact, merely demonstrates defendant's desire to avoid apprehension, not to avoid pedestrians. To the extent it indicates avoidance of other vehicles, it simply shows that he was not suicidal.

During the high-speed car chase, defendant drove at speeds greatly exceeding the speed limit, through red lights and in the path of oncoming traffic, to avoid police pursuit; he narrowly missed one pedestrian before striking and killing another; and he refused to change his driving behavior in the face of this encounter, when he had the opportunity to display

that he cared whether or not he might strike a pedestrian.

Viewing the evidence in the light most favorable to the

prosecution, as we must, there is a valid line of reasoning and

permissible inferences from which a rational jury – the jury in

this trial – could have found that defendant's state of mind was

not extreme recklessness alone, but also utter indifference to

the value of human life – that he simply did not care whether or

not a pedestrian died.

Therefore, I would affirm the unanimous order of the

Appellate Division, holding that the evidence of defendant's

guilt of murder in the second degree was legally sufficient.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order modified by reducing defendant's conviction of murder in
the second degree to manslaughter in the second degree and
remitting to Supreme Court, Kings County, for resentencing and,
as so modified, affirmed.  Opinion by Judge Rivera.  Chief Judge
Lippman and Judges Read, Smith and Abdus-Salaam concur.  Judge
Pigott dissents in an opinion in which Judge Graffeo concurs.


Decided July 1, 2014