People v Spratley (2017 NY Slip Op 05478)





People v Spratley


2017 NY Slip Op 05478


Decided on July 6, 2017


Appellate Division, Third Department


Peters, P.J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 6, 2017

109101

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Appellant,
v
WAYNE J. SPRATLEY, Respondent.

Calendar Date: June 7, 2017

Before: Peters, P.J., Rose, Mulvey, Aarons and Pritzker, JJ.


Joseph A. McBride, District Attorney, Norwich (Michael J. Genute of counsel), for appellant.
Michael A. Garzo Jr., Binghamton, for respondent.


Peters, P.J.

Appeal from an order of the County Court of Chenango County (Revoir Jr., J.), entered November 18, 2016, which partially granted defendant's motion to dismiss the indictment.
During the early morning hours of July 19, 2015, an incident occurred outside of a bar in the City of Norwich, Chenango County during which defendant, a Caucasian male, hurled numerous racial slurs towards the African-American victim before shooting him in the abdomen. A grand jury returned a six-count indictment charging defendant with attempted murder in the second degree as a hate crime (count 1) (see Penal Law §§ 110.00, 125.25 [1]; 485.05 [1] [b]), assault in the first degree as a hate crime (count 2) (see Penal Law §§ 120.10 [1]; 485.05 [1] [b]) and criminal use of a firearm in the first degree as a hate crime (count 3) (see Penal Law §§ 265.09 [1] [a]; 485.05 [1] [b]), as well as the equivalent non-hate crimes of attempted murder in the second degree, assault in the first degree and criminal use of a firearm in the first degree. Defendant thereafter moved to, among other things, dismiss the indictment on the basis that the evidence before the grand jury was legally insufficient to support the charged crimes. County Court partially granted the motion and dismissed the hate crime counts, finding that the evidence submitted to the grand jury was not sufficient to establish that such offenses were committed "in whole or in substantial part because of a belief or perception regarding the race" of the victim (Penal Law § 485.05 [1] [b]). This appeal by the People ensued.
To dismiss an indictment or counts thereof on the basis of insufficient evidence before a grand jury, "a reviewing court must consider whether the evidence viewed in the light most [*2]favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury" (People v Grant, 17 NY3d 613, 616 [2011] [internal quotation marks and citations omitted]; see People v Mills, 1 NY3d 269, 274-275 [2003]). "In the context of a [g]rand [j]ury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (People v Bello, 92 NY2d 523, 526 [1998]; accord People v Grant, 17 NY3d at 616; see CPL 70.10; People v Garson, 6 NY3d 604, 613 [2006]). Thus, we limit our inquiry to assessing "whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes, and whether the [g]rand [j]ury could rationally have drawn the guilty inference" (People v Grant, 17 NY3d at 616 [internal quotation marks and citations omitted]; see People v Jensen, 86 NY2d 248, 252 [1995]; People v Waite, 108 AD3d 985, 985 [2013]).
With this framework in mind, we now examine the hate crime element of the charges at issue. Pursuant to the Hate Crimes Act (L 2000, ch 107), codified in Penal Law article 485, a person commits a hate crime when he or she commits a "specified offense" and, insofar as is relevant here, "intentionally commits the act or acts constituting the offense in whole or in substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person, regardless of whether the belief or perception is correct" (Penal Law § 485.05 [1] [b]). The statute expressly provides that proof of the race or other attribute of the defendant and the victim, or proof that they are of different races, "does not, by itself, constitute legally sufficient evidence satisfying the People's burden" of proving the intent and motive required for a hate crime (Penal Law § 485.05 [2]; see William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 485.05 at 284). However, "[t]he class of persons to which the defendant and the victim belong may be proven at trial and the contrast between the two may be a factor, along with other evidence, in deciding whether the defendant has violated the hate crimes statute" (Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 485.05 at 284 [internal quotation marks omitted]).
Addressing count 3 of the indictment, we agree with County Court that dismissal was required, but for a different reason. As we previously observed, a conviction for any hate crime requires that the accused commit a "specified offense" (Penal Law § 485.05 [1], [3]). The crime of criminal use of a firearm in the first degree, however, is not listed as a specified offense in the hate crime statute (see Penal Law § 485.05 [3]). For this reason alone, count 3 was subject to dismissal.
Counts 1 and 2 of the indictment charge defendant with attempted murder in the second degree and attempted assault in the first degree as hate crimes, each of which is a "specified offense" under Penal Law § 485.05 (3). The issue thus distills to whether the evidence before the grand jury, viewed most favorably to the People, was legally sufficient to establish that defendant intentionally committed the act or acts constituting these offenses "in whole or in substantial part because of a belief or perception regarding the race" of the victim (Penal Law § 485.05 [1] [b]; see People v Assi, 14 NY3d 335, 340 [2010]). We find that it was, and therefore reinstate those counts of the indictment.
The evidence presented to the grand jury established that, while socializing at a bar on the evening in question, defendant crossed paths with another patron, known as James, while both men were assisting a woman who was ill. During that encounter, defendant — a correction officer — flashed a badge, stating that he was an undercover cop on a "special mission" and that he was "doing [his] civic duty." After assisting the ill woman, defendant insisted on buying James a drink and the two walked together to another nearby bar known as The Tavern. While [*3]en route, defendant stated to James, "I hate black people but you, you're cool, and I think you will be my only black person friend." Upon arriving at The Tavern, the two had missed last call and were not able to order another drink, prompting James to retire for the evening. Defendant remained in the bar until approximately 3:15 a.m., when it closed and all patrons were asked to leave.
Upon exiting, defendant approached a group of four people, which included the victim, who were standing outside of the bar. Several witnesses explained that, after speaking with one of the women in the group, defendant requested a ride home and then suddenly pulled out a gun and displayed his correction officer badge, apparently in an effort to convince the bystanders that he was a trustworthy individual. One of the individuals present told defendant to put the gun away and get out of there and, as defendant attempted to do so, the weapon fell to the ground. When the victim made a comment to defendant about his actions, defendant responded with a tirade of racial slurs directed solely at the victim, referring to him as a "monkey," "slave" and "jungle bunny," and using the term "nigger" several times. One witness explained that, during this engagement, defendant — while pointing his gun at the victim — threatened, "[W]hat's it to you, nigger. . . . I'll kill you, I'll kill you." With the victim clearly angered by this dialogue, others quickly intervened and attempted to distance the two from one another. Even while being led away from the front of the bar by one of the witnesses, defendant continued to antagonize and sling racial epithets at the victim. The victim followed and verbally responded to defendant's slurs, but, according to all involved, did not himself use racial epithets. When the melee reached a nearby parking lot and with defendant still hurling racial epithets towards the victim, the individual who had been attempting to lead defendant away from the bar left defendant and proceeded to walk over to the victim in an effort to calm him. This same witness recounted that the victim then "got around [him]" and, together with another individual, began approaching defendant. At this point, defendant was observed standing in a shooting position with his gun pointed at the victim, who was approximately three feet away. Defendant, still in a shooting position, then stated to the victim, "What are you going to do, monkey?" One of the individuals involved in the commotion then jumped on defendant and knocked him to the ground. From the ground, defendant fired at least two shots at the victim, striking him in the abdomen.
Viewed most favorably to the People, the evidence before the grand jury provided a prima facie case of the hate crimes of attempted murder in the first degree and assault in the first degree. The foregoing testimony established that defendant repeatedly hurled several denigrating, racial slurs at the victim alone,[FN1] whom he did not know, from the outset of the confrontation until the moment before he shot the victim at point blank range. Racial animosity and the use of epithets relating to a protected attribute, such as race, are probative of a defendant's motive and intent for purposes of proving a hate crime (see People v Peels, 123 AD3d 597, 597 [2014], lv denied 25 NY3d 1075 [2015]; People v Alas, 44 AD3d 534, 534 [2007], lv denied 10 NY3d 807 [2008]). The grand jury could have rationally inferred from this evidence — as well as the testimony that defendant had, just a half hour earlier, openly stated to another bar patron that he "hate[d] black people" — that the acts constituting the crimes at issue were motivated "in whole or in substantial part" by the victim's race (Penal Law § 485.05 [1] [b]; see People v Ortiz, 48 AD3d 1112, 1112 [2008]; see also People v Wallace, 113 AD3d 413, 414 [2014], affd 27 NY3d 1037 [2016]; People v Marino, 35 AD3d 292, 293 [2006]; compare People v Wright, 107 AD3d 1398, 1401 [2013], lv denied 23 NY3d 1026 [2014]). Because the grand jury could have rationally drawn the inference of guilt from this proof, the fact "'[t]hat other, [*4]innocent inferences could possibly be drawn from the facts is irrelevant'" (People v Jensen, 86 NY2d at 253, quoting People v Deegan, 69 NY2d 976, 979 [1987]; accord People v Bello, 92 NY2d at 526). Accordingly, we modify the judgment and reinstate counts 1 and 2 of the indictment.
Rose, Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the order is modified, on the law, by reversing so much thereof as partially granted defendant's motion and dismissed counts 1 and 2 of the indictment; motion denied to that extent and said counts reinstated; and, as so modified, affirmed.



Footnotes

Footnote 1: No testimony was presented regarding the race of the other individuals involved.