# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 96  SSM 27
The People &c.,
  Respondent,
  v.
Michael Edwards,
  Appellant.

Submitted by Angela Kelley, for appellant.
Submitted by Peter H. Willis, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed.

The evidence presented to the Grand Jury was legally sufficient to demonstrate that

defendant acted with depraved indifference to human life (*see* Penal Law § 120.10 [3]).

"To dismiss an indictment on the basis of insufficient evidence before a Grand Jury, a reviewing court must consider 'whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury'" (*People v Bello*, 92 NY2d 523, 525 [1998], quoting *People v Jennings*, 69 NY2d 103, 114 [1986]; *see People v Grant*, 17 NY3d 613, 616 [2011]). Depraved indifference means "'an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not'" (*People v Wilson*, 32 NY3d 1, 6 [2018], quoting *People v Feingold*, 7 NY3d 288, 296 [2006]; *see People v Heidgen*, 22 NY3d 259, 274 [2013]). A determination that a defendant acted depravedly indifferent is a "highly fact-specific" inquiry (*Heidgen*, 22 NY3d at 276).

There was evidence before the Grand Jury that, in order to evade the police, defendant, who was legally intoxicated, fled down a local road with two passengers at a speed of at least 119 miles per hour—more than three times the speed limit. Defendant then abruptly swerved across the lanes of oncoming traffic into a parking lot and crashed into a wall. Viewing the evidence in the light most favorable to the People, the Grand Jury could rationally have found that defendant "recklessly engaged in conduct that created a grave risk of death to [his passengers], with an utter disregard for whether any harm came to th[em]" (*Heidgen*, 22 NY3d at 278). "That other, innocent inferences could possibly be drawn from [the evidence presented to the Grand Jury] is irrelevant to the sufficiency inquiry" where, as here, "'the Grand Jury could rationally have drawn the guilty inference'" (*Bello*, 92 NY2d at 526, quoting *People v Deegan*, 69 NY2d 976, 979 [1987]).

WILSON, J. (dissenting):

Mr. Edwards, intoxicated from a night of bar hopping, crashed his car after fleeing from a police officer at incredibly high speed, severely injuring his two passengers. It is undisputed that the evidence presented to the grand jury was sufficient to support a

multitude of felony charges against him.  Supreme Court concluded that the evidence was insufficient to warrant a charge of depraved indifference assault, and struck those counts from the indictment.  Those counts cannot survive unless Mr. Edwards' conduct reflects "wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts" (*People v Suarez*, 6 NY3d 202, 214 [2005]).  Under our precedents, the conduct alleged does not meet that standard.

As recounted by the Appellate Division, the facts presented to the grand jury— viewed in the light most favorable to the People—are as follows: Mr. Edwards, accompanied by two friends, spent an evening patronizing bars.  Intoxicated and with his friends as passengers, he drove through the streets of Rotterdam at nearly double the speed limit: 68 miles per hour in a 35 mile-per-hour zone.  When an officer attempted to stop him by activating the police car's lights and siren, Mr. Edwards accelerated, fleeing at a speed that reached 119 miles per hour.  The officer pursued Mr. Edwards briefly but discontinued pursuit pursuant to departmental policy.  Mr. Edwards made a sharp turn into a grocery store parking lot—a shortcut to another street—where his car slammed into a concrete divider, severely injuring his two passengers.  Crash data recovered from the vehicle showed that for the five seconds prior to the crash, Mr. Edwards was pressing the brake.  At the time of the collision, the car was traveling 60 miles per hour.

Mr. Edwards was arrested and arraigned on an eleven-count indictment.  For the injuries to the two passengers, Mr. Edwards was charged with two counts of assault in the first degree (a Class B felony), aggravated vehicular assault (a Class C felony), assault in the second degree (a Class D felony), vehicular assault in the second degree (a Class E

felony), as well as reckless driving, speeding, and driving while intoxicated (all misdemeanors). Supreme Court dismissed two of the eleven counts (first-degree assault) for lack of legally sufficient evidence demonstrating that Mr. Edwards possessed the requisite *mens rea*: depraved indifference to human life. The People appealed the dismissal, and the Appellate Division, in a split decision, ordered the reinstatement of the dismissed charges (*People v Edwards*, 182 AD3d 929 [3d Dept 2020]). Justice Lynch, dissenting, agreed with Supreme Court and concluded that the undisputed evidence of Mr. Edward's de-acceleration prior to the crash demonstrated his "conscious avoidance of risk" which Justice Lynch noted is "the antithesis of a complete disregard for the safety of others" (*id*. [Lynch, J. dissenting], quoting *People v Maldonado*, 24 NY3d 48, 54 [2014]).

Unquestionably, Mr. Edwards' inebriated flight from the officer was reckless and dangerous. But recklessness and dangerousness are insufficient to meet the very high bar required for depraved indifference to human life, as defined by the legislature in its carefully crafted design for vehicular assaults. The indictment contains two counts each of second-degree assault and vehicular assault and one count of aggravated vehicular assault, which are class D, E, and C felonies, respectively. Those charges fit the facts presented to the grand jury; the counts for depraved indifference assault do not.

To support the charges of first-degree assault for the concededly unintentional vehicular assault at issue here, the People were required to introduce evidence of criminal culpability that goes far beyond recklessness (*see Suarez*, 6 NY3d at 214 [2005] ["Circumstances evincing a depraved indifference to human life are not established by recklessness coupled only with actions that carry *even an inevitable risk of death*"] [internal

quotations and brackets omitted] [emphasis added]). "Reflecting wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts, depraved indifference is embodied in conduct that is 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy' as to render the actor as culpable as one whose conscious objective is to kill" (*id*., quoting *People v Russell*, 91 NY2d 280, 287 [1998]).

Only in rare circumstances will a defendant's "grave[] culpability" (*People v Poplis*, 30 NY2d 85, 88 [1972]) satisfy the depraved indifference standard (*see People v Maldonado*, 24 NY3d 48, 50 [2014] [noting "the *narrow* category of cases wherein the facts evince a defendant's utter disregard for human life"] [emphasis added]). Mr. Edwards' alleged conduct, taken in the light most favorable to the People, comes nowhere near the level of egregious conduct required to render him as culpable as an intentional killer. In *People v Jernatowski* (238 NY 188 [1924]), we upheld the conviction of a man who fired indiscriminately into a house knowing that people resided within, killing one woman. Although there was "no specific intent to kill," we concluded that the jury was "amply justified" in convicting the defendant of murder because firing into the house was both "imminently dangerous" and "evinced a wicked and depraved mind regardless of human life" (*id* at 192-193).

More recently, in *People v Wilson* (32 NY3d 1 [2018]), we upheld a jury's finding of depraved indifference assault after the defendant tortured his girlfriend for months. The evidence at trial showed that the victim had "suffered black eyes, an infected cigarette burn, 'cauliflower ear,' broken ribs, a collapsed lung, several broken vertebrae in her neck and

back, a fractured orbital bone, a broken nose, a dislocated shoulder, a shattered breastbone, multiple lacerations, and bruises all over her body" (*id*. at 5). The defendant's friend heard the victim moaning in the background of a phone call and told the defendant to seek medical help for her; he did not (*id*. at 2). After this "prolonged period of torture" (*id*. at 10), the victim lapsed into a coma. Two clergymen, observing her condition, called 911 over the defendant's objections; the victim's life was saved only by the emergency care of the hospital staff. On appeal, we noted that the defendant's conduct over the two-month period prior to the victim's hospitalization exhibited both an intent to abuse and the kind of "'inhuman cruelty' contemplated by a depraved indifference" to the victim's life (*id*. at 7, quoting *Suarez*, 6 NY3d at 216).

In addition to the cases above, we have noted that "quintessential" examples of depraved indifference include: "[1] opening the lion's cage at the zoo; [2] placing a time bomb in a public place; [3] poisoning a well from which people are accustomed to draw water; [4] opening a drawbridge as a train is about to pass over it and [5] dropping stones from an overpass onto a busy highway" (*Suarez*, 6 NY3d at 214 [2005]).

As our caselaw demonstrates, we have carefully guarded the line between criminal behavior that is reckless and criminal behavior that shows depravity and indifference towards human life, particularly in the context of vehicle crashes. In *People v Heidgen* (22 NY3d 259 [2013]), we cautioned that "intoxicated driving cases that present circumstances evincing a depraved indifference to human life are likely to be few and far between" (*id*. at 267). *Heidgen* was just such an exceptional case. Mr. Heidgen "engage[d] in what amounts to a high speed game of chicken" (*id*. at 277), driving for miles on the wrong side

of the road while "appear[ing] to follow, or track, the headlights of oncoming vehicles" (*id*.).  In *Taylor* and *McPherson*, decided the same day as *Heidgen*, the defendants likewise drove for miles in the wrong direction on the highway, one without ever applying his brakes or attempting to avoid other vehicles until a fatal crash.

In contrast, one year later in *Maldonado*, we held that the evidence was legally insufficient to support a conviction for depraved indifference homicide because the defendant sought to mitigate the consequences of his reckless driving by "actively attempt[ing] to avoid hitting other vehicles" (24 NY3d 48, 53 [2014]).  In *Maldonado*, we rejected the People's contention that the context of a high speed police chase transmuted Mr. Maldonado's reckless driving into that of a depraved and indifferent murderer, stating:

> "[b]y its nature, a high-speed chase endangers pedestrians and other drivers and carries the potential for grave injuries and fatalities. Defendants who take part in high-speed chases violate accepted rules of the road and drive in what is generally considered a reckless manner. Yet, not every vehicular police chase resulting in death will take place under circumstances evincing the defendant's depraved indifference" (*id*. at 57-58).

Today's decision is not consistent with the line drawn by *Heidgen* and *Maldonado* or with our larger body of law concerning depraved indifference in non-vehicular cases. The decision confuses drunken recklessness causing disaster with depraved indifference (*see Suarez*, 6 NY3d at 214 ["Circumstances evincing a depraved indifference to human life are not established by recklessness coupled only with actions that carry even an inevitable risk of death"] [internal quotations and brackets omitted]; *see also Poplis*, 30 NY2d at 87-88 [noting that depraved indifference requires "something more serious than mere recklessness alone which has had an incidental tragic result" and upholding the jury's

findings based on "repeated physical violence of defendant to the child and ultimately her death"]).

Mr. Edwards' actions bear little resemblance to Mr. Maldonado's and even less to Mr. Heidgen's. Viewing the facts in the light most favorable to the People, they establish only that Mr. Edwards accelerated to a very high speed in an effort to evade police pursuit, traveled for less than a minute at that speed, decelerated rapidly, attempted to make a sharp turn into a parking lot when one of his passengers reported seeing a police car, and careened into a retaining wall at a speed of 60 MPH. There is no evidence that he drove through an area with other vehicles on the road or an area that, at the time, had pedestrians in his path. In *Maldonado*, we firmly rejected the People's argument that a reckless driver who flees the police at high speed necessarily becomes indifferent to human life (*see Maldonado*, 24 NY3d at 57-58). The facts of this case provide no reason to change our mind.

Moreover, depraved indifference is not just a common-law heritage; it must be read in the context of the legislature's treatment of assaults in general, and vehicular assaults in particular. The Penal Law sets out a graduated system of punishment that assigns different levels of criminal culpability to different crimes. In *People v Valencia* (14 NY3d 927 [2010]), another intoxicated vehicular assault case, we gave proper deference to the legislature's chosen scheme by holding that the evidence there was sufficient to sustain the charges for vehicular assault (Penal Law § 120.03[1]), and assault in the second degree (Penal Law § 120.05 [4]), but not for depraved indifference. Even though the intoxicated defendant drove at high speed at night for miles in the wrong direction, and notwithstanding attempts by oncoming drivers to "warn him of the danger he was creating" (*id*. at 928

[Graffeo, J. concurring]), we held that there was "insufficient evidence to . . . establish that [Mr. Valencia] acted with the culpable mental state of depraved indifference" (*id*. at 927-928).

The crime in *Valencia* occurred before the legislature's latest enactment of yet another vehicle-related crime: aggravated vehicular assault (Penal Law § 120.04–a). Created in 2007, partially in response to our Court's evolving depraved indifference jurisprudence (*see Valencia*, 14 NY3d at 930 [Graffeo, J. concurring] [describing the legislative history of the enactment]), aggravated vehicular assault is a Class C felony, punishable by up to fifteen years in prison. It requires the People to show, among other conditions, that the defendant caused serious injury to a person while driving recklessly, with intoxication as a condition that satisfies the statute, elevating what otherwise would be a Class D felony (punishable by up to seven years in prison) to a Class C felony.

Thus, the legislature has expressly thought about the situation here and the inadequacy of the preexisting D-felony vehicular assault for persons whose conduct is like Mr. Edwards', and created a crime with an enhanced penalty. Had the legislature believed that circumstances like these constituted depraved indifference (warranting a sentence of up to 25 years in prison), it would not have enacted Penal Law § 120.04–a.

When prosecutors ignore the legislature's carefully drawn taxonomy and charge a defendant with the full sweep of the Penal Law, it is incumbent upon the courts to intervene to effectuate the legislature's intent (*see* CPL 210.20 [1] [b] [directing superior courts to dismiss charges lacking legally sufficient evidence]). Supreme Court undertook that task with care and diligence, reviewing the full evidence before the grand jury and concluding,

correctly, that the evidence here—of a turn gone wrong during a police chase—is woefully

insufficient to demonstrate Mr. Edwards' depravity and indifference to human life.

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, in a memorandum. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Feinman concur.  Judge Wilson dissents in an opinion.

Decided November 24, 2020